BLANK ROME LLP
Attorneys for Plaintiff
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY  10174-0208
(212) 885-5000



**Judge Berman**

'09 CIV 5280

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OLDENDORFF  CARRIERS  GmbH  &  CO.
KG,

                    Plaintiff,

          -against-

BARNA CONSHIPPING, S.L.,

                    Defendant.

---

09 Civ.

**VERIFIED COMPLAINT**

          Plaintiff, OLDENDORFF CARRIERS GmbH & CO KG ("Plaintiff"), by its attorneys

Blank Rome LLP, complaining of the above-named Defendant, BARNA CONSHIPPING, S.L.

("Defendant"), alleges upon information and belief as follows:

          1.          This is a case of admiralty and maritime jurisdiction, as hereinafter more fully

appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure.  The Court has admiralty jurisdiction under 28 U.S.C. §1333.

          2.          At all material times, Plaintiff was and now is a German company with a principal

place of business at Willy Brandt Allee 6, 23554 Lübeck, Germany.

          3.          At all material times, Defendant was and is a foreign corporation or other business

entity organized under the laws of Spain or another foreign nation with its offices at Poligono

Industrial San Vicente, s/n, 08755 Castellbisal, Barcelona, Spain and no place of business in the United States.

4.    By a charter party dated on or about October 22, 2008 ("the Charter"), Plaintiff chartered the M/V SATURNAS ("the Vessel") to Defendant to carry a cargo of steel beams ("Cargo) from Barcelona, Spain to a) Norfolk, Virginia, b) Mobile, Alabama, c) Houston, Texas, and d) Altamira, Mexico. The Charter is memorialized in the "recap" annexed as Exhibit A.

5.    Pursuant to the Charter, Defendant arranged and paid for the loading of the steel beams at Barcelona, Spain.

6.    Pursuant to the Charter, Defendant was allowed an agreed number of "free days" to load the Cargo at Barcelona and was obliged to pay $15,000 per day or pro rata for any day used in excess of those "free days."

7.    With respect to the discharge ports, the charter provided that the Cargo was to be discharged with "customary quick dispatch."

8.    During the loading, disputes arose between and among Defendant, the buyer of the Cargo in the United States, Commercial Metals Trading Company d/b/a CMC Dallas Trading ("CMC"), and Defendant's affiliate, the manufacturer and seller of the Cargo, Compania Espanola de Laminacion, S.L. ("Celsa").

9.    These disputes concerned, inter alia, the condition of the Cargo and the manner by which Defendant and its agents loaded the Cargo onto the Vessel.

10.    The bills of lading for the Cargo are annexed as Exhibit B.

11.    The Vessel proceeded to the first discharge port at Norfolk, Virginia, and arrived off Norfolk on November 18, 2008.

12.   In breach of the Charter, Defendant failed, and/or was unable, to make timely arrangements for the discharge of the Cargo at Norfolk due, in whole or in part, to the disputes between and among it, CMC, and Celsa.

13.   As a result of Defendant's breach of the Charter at Norfolk, the Vessel was detained 49.9104 days at Norfolk longer than it would have been but for Defendant's breach.

14.   Accordingly, Defendant owes Plaintiff "damages for detention" for these 49.9104 days at Norfolk. The parties agreed in the Charter that the daily value of the Vessel at the loadport was $15,000 per day or pro rata. At $15,000 per day, Plaintiff's "damages for detection" at Norfolk total of $749,281.25, none of which has been paid, although duly demanded.

15.   A copy of Plaintiff's invoice for this $749,281.25 is annexed as Exhibit C.

16.   Following completion of discharge of the Cargo at Norfolk, the Vessel proceeded to the second discharge port of Mobile, Alabama, and arrived off Mobile on or about January 15, 2009.

17.   In breach of the Charter, Defendant failed, and/or was unable, to make timely arrangements for the discharge of the Cargo at Mobile due, in whole or in part, to the disputes between and among it, CMC, and Celsa.

18.   As a result of Defendant's breach of the Charter at Mobile, the Vessel was detained 4.5542 days at Mobile longer than it would have been but for Defendant's breach.

19.   Accordingly, Defendant owes Plaintiff "damages for detention" for these 4.5542 days at Mobile at a rate of $15,000 per day, for a total of $68,312.50, none of which has been paid, although duly demanded.

20.   A copy of Plaintiff's invoice for this $68,312.50 is annexed as Exhibit D.

21.    Following completion of discharge of the Cargo at Mobile, the Vessel proceeded to the third discharge port of Houston, Texas, and arrived off Houston on January 23, 2009.

22.    In breach of the Charter, Defendant failed, and/or was unable, to make timely arrangements for the discharge of the Cargo at Houston due, in whole or in part, to the disputes between and among it, CMC, and Celsa.

23.    As a result of Defendant's breach of the Charter at Houston, the Vessel was detained 6.1528 days at Houston longer than it would have been but for Defendant's breach.

24.    Accordingly, Defendant owes Plaintiff "damages for detention" for these 7.1528 days at Mobile at a rate of $15,000 per day, for a total of $107,291.67, none of which has been paid, although duly demanded.

25.    A copy of Plaintiff's invoice for this $107,291.67 is annexed as Exhibit E.

26.    Following completion of discharge of the Cargo at Houston, the Vessel waited at Houston for orders to proceed to the fourth discharge port, Altamira, Mexico. During this wait, the vessel shifted to an unoccupied berth. Plaintiff was charged and has paid $25,239.72 in "dockage" for the use of this berth, none of which has been paid by Defendant, although duly demanded. Plaintiff would not have incurred this charge but for Defendant's breach of the Charter.

27.    A copy of the invoice for the layberth charges in annexed as Exhibit F.

28.    Instead of receiving such orders, however, Defendant directed Plaintiff to re-berth the Vessel at a pier in Houston in order discharge the Cargo destined for Altamira at Houston.

29.    The Vessel re-berthed at a pier in Houston on or about February 13, 2009, and discharged the balance of the Cargo there.

30.    In breach of the Charter, Defendant failed, and/or was unable, to make timely arrangements for the discharge of the Cargo destined for Altamira, due in whole or in part, to the disputes between and among it, CMC, and Celsa.

31.    As a result of Defendant's breach of the Charter with respect to the Cargo destined for Altamira, the Vessel was detained a further 8.3299 days at Houston longer than it would have been but for Defendant's breach.

32.    Accordingly, Defendant owes Plaintiff "damages for detention" for these additional 8.3299 days at Houston at a rate of $15,000 per day, for a total of $124,947.92, none of which has been paid, although duly demanded.

33.    A copy of Plaintiff's invoice for this $124,947.92 is annexed as Exhibit G.

34.    During the period the Vessel was in United States waters, Defendant commenced in rem actions against the Cargo in the United States District Courts for the Eastern District of Virginia (08 CV 612) ("Norfolk Action"), the Southern District of Alabama (CV-09-0027-KD-C)("Mobile Action'), and the Southern District of Texas (09-CV-00163).

35.    On January 30, 2009, CMC filed an action in the United States District Court for the Southern District of Texas (09-cv-00272) and named as defendants the Vessel, in rem, and S-Bulk KS, Seven Seas Carriers AS, and Plaintiff, in personam.  The actions filed by Defendant and CMC in Houston were consolidated (together, the "Houston Action").

36.    In the Houston Action, CMC caused the Vessel to be arrested to obtain security for its claims that the Cargo was damaged prior to loading and also during transit.

37.    Following an evidentiary hearing and argument, the Court in Houston issued an Order dated February 11, 2009, directing that Head Owners post security in the amount of $2,500,000 in order for the Vessel to be released from arrest ("February 11 Security Order").

38. A copy of the February 11 Security Order is annexed as Exhibit H.

39. Head Owners provided security in the amount of $2,500,000, and the Vessel was released.

40. Upon information and belief, Head Owners then made demand upon Grand China to provide security to Head Owners in the amount of $2,500,000.

41. By letter dated May 7, 2009, Grand China, through its Hong Kong attorneys, made demand on Plaintiff to provide security to Grand China and/or directly to Head Owners in the amount of $2,500,000.

42. Plaintiff has made demand upon Defendant to provide security to Grand China and/or Head Owners in the amount of $2,500,000, but Defendant has not provided it, in further breach of the Charter.

43. To protect its interests, Plaintiff incurred legal expenses in the United States and Mexico as a result of Defendant's breach of the Charter, including, but not limited to, fees and disbursements paid to (a) Blank Rome LLP (New York), (b) Vandeventer Black LLP (Norfolk), (c) Johnstone, Adams, Bailey, Gordon & Harris, L.L.C (Mobile), (d) Cohen Gorman & Putnam LLP (Houston), and (e) Garza Tello & Asociados, S.C. (Mexico City).

44. In addition, as a result of Defendant's breach of the Charter, expenses including but not limited to, fees paid to surveyors in excess of what Plaintiff would have paid but for Defendant's breach.

45. The Charter provides for arbitration of disputes in London between Plaintiff and Defendant. Pursuant to 9 U.S.C. § 8, Plaintiff has commenced this action to obtain security for the claims described above and reserves its right to arbitrate all such disputes as well as such additional ones as may arise. In particular, Plaintiff reserves its right to amend this complaint

and to claim in the London arbitration amounts based on claims alleged above but not yet fully quantified and to include such additional claims and damages as it may suffer as a result of Defendant's breach of the Charter.  Such claims include, but are not limited to, legal fees and disbursements, additional surveyor and other expenses, the amount of any judgment against it in the Houston Action, and/or the amount of or cost of providing security to Grand China and/or Head Owners.

46.    The principal amount of the claims for which Plaintiff presently seeks security in this action is $1,075,073.06, the sum of the amounts claimed in Exhibits C through G.

47.    The claims with respect to the alleged damage to the Cargo will be fact-intensive and expensive to prepare and present to the arbitrators.

48.    Maritime Arbitrators in London award interest, legal fees and arbitral costs to a successful party.  Plaintiff estimates recoverable interest on the amount of the detention claim will amount to $154,460.52 at a rate of 4.5%, compounded at quarterly rests for at least 3 years and that recoverable arbitral and legal costs will be incurred in pursuing its claim against Defendant in the sum of at least $300,000, amounting in all to recoverable interest and expenses of at least $454,460.52.

49.    The total amount of Plaintiff's claims for which Plaintiff requests issuance of Process of Maritime Attachment and Garnishment is **$1,529,533.58.**

50.    Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendant is believed to have or will have during the pendency of this action, assets within this district consisting of cash, funds, freight, hire, and/or credits in the hands of garnishees in this District, including but not limited to electronic fund transfers, because

Defendant conducts business internationally in United States Dollars, and all electronic fund transfers are processed by intermediary banks in the United States, primarily in New York.

51.    Plaintiff's belief that Defendant's property may be found in this District is based on the facts that Defendant is in the business of chartering oceangoing vessels in international commerce and arranging for their discharge at ports in the United States and elsewhere in the world and that such transactions are generally made in U.S. dollars by wire transfers cleared by intermediary banks in New York such as those named in the proposed order.

52.    In particular, in November 2008, Defendant made a freight payment in dollars to Plaintiff under the Charter by wire transfer, as shown on Exhibit I, which was cleared by JPMorganChase in New York.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of Defendants' tangible or intangible property or any other funds held by any garnishee in the district which are due and owing or otherwise the property of to the Defendant up to the amount of **$1,529,533.58** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.    That since it appears that the U.S. Marshal's Service lacks sufficient staff to effect service of process of Maritime Attachment and Garnishment promptly or economically, and that since appointing a person over 18 years of age and who is not a party to this action will result in substantial economies in time and expense, such a person be appointed pursuant to Fed.R.Civ.P. 4(c) to serve process of Maritime Attachment and Garnishment in this action.

D.    That this Court enter judgment for Plaintiff's damages plus interest and costs, or retain jurisdiction over this matter through the entry of a judgment on an arbitration award.

E.    That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: New York, NY
         June 5, 2009

                                        Respectfully submitted,
                                        BLANK ROME, LLP
                                        Attorneys for Plaintiff

                                        By_____
                                             LeRoy Lambert (LL-3519)
                                        The Chrysler Building
                                        405 Lexington Avenue
                                        New York, NY 10174-0208
                                        (212) 885-5000
                                        llambert@blankrome.com

VERIFICATION

STATE OF NEW YORK        )
                                          : ss.:
COUNTY OF NEW YORK     )

LeRoy Lambert, being duly sworn, deposes and says:

1.      I am a member of the bar of this Honorable Court and of the firm of Blank Rome

LLP, attorneys for the Plaintiff.

2.      I have read the foregoing Complaint and I believe the contents thereof are true.

3.      The reason this Verification is made by deponent and not by Plaintiff is that

Plaintiff is a foreign corporation, and no officer or director is presently within this jurisdiction.

4.      The sources of my information and belief are documents provided to me and

statements made to me by representatives of the Plaintiff.

_____
LeRoy Lambert

Sworn to before me this
5th day of June, 2009

_____
Notary Public

**MICHELE GRANITO**
**Notary Public, State of New York**
**No. 01GR6202734**
**Qualified in Richmond County**
**Commission Expires Mar 23, 20__**

BLANK ROME LLP
Attorneys for Plaintiff
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY  10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLDENDORFF CARRIERS GmbH & CO. KG, | 09 Civ. |
| Plaintiff, | |
| -against- | **AFFIDAVIT PURSUANT TO SUPPLEMENTAL RULE B** |
| BARNA CONSHIPPING, S.L., | |
| Defendant. | |

STATE OF NEW YORK   )
                             )    ss:
COUNTY OF NEW YORK  )

        LEROY LAMBERT, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Honorable Court and a member of the firm of

Blank Rome LLP, attorneys for the Plaintiff herein.  I am familiar with the circumstances of the

Verified Complaint and submit this affidavit in support of Plaintiff's request for the issuance of

Process of Maritime Attachment and Garnishment of the property of defendant BARNA

CONSHIPPING, S.L. ("Defendant"), a foreign corporation, pursuant to Supplemental Rule B

For Certain Admiralty and Maritime Claims of the Federal Rules of the Federal Rules of Civil

Procedure.

        2.      Defendant is a party to the maritime contract of charter party on which this claim

is based, and is a foreign corporation or other business entity organized and existing under the

laws of Spain or another foreign jurisdiction.

3.      Under my supervision, my office conducted a search of the New York State Secretary of State, Division of Corporations, the Transportation Tickler, telephone assistance, and a general internet search.

4.      In our search, we did not find any listing or reference to Defendant in this judicial district or the state of New York.  In the circumstances, I believe Defendant cannot be found within this district.

5.      We have been advised that the U.S. Marshal's Service lacks sufficient staff to effect service of Process of Maritime Attachment and Garnishment promptly or economically.  I respectfully request that the Court appoint Michael Watson, or any other person appointed by Blank Rome LLP who is over 18 years of age and is not a party to this action, to serve Process of Maritime Attachment and Garnishment and supplemental process on the garnishees named in Schedule A to the Order Directing Clerk to Issue Process of Maritime Attachment and Garnishment and Appointing Process Service, or upon any other or additional garnishees as may be named in any supplemental Process of Maritime Attachment and Garnishment.

6.      As alleged in paragraphs 50-52 of the Complaint, I believe that Defendant has and will have property in this District, including electronic funds transfers.

_____
LeRoy Lambert

Sworn to before me this
5th day of June, 2009

_____
Notary Public

**MICHELE GRANITO**
**Notary Public, State of New York**
**No. 01GR6202734**
**Qualified in Richmond County**
**Commission Expires Mar 23, 20_13_**

2

# Exhibit A

From: mail@aqua-marine.de [mailto:mail@aqua-marine.de]
Sent: Mittwoch, 22. Oktober 2008 10:40     Document 1     Filed 06/05/2009     Page 14 of 56
To: Ihlenfeld, Bjoern
Subject: saturnus/barna/corected recap showing norfolk, newport.....

Doc-No. 2718197  22/OCT/2008  11:38 (UTC +0200) SJ

corrected recap showing norfolk, newport news marine terminal

 + sven
to EOlueb   att björn
to echosvbg att steffen

barna / EO  mv "saturnus" - bracelona//3 usa +  altamira cp dated 21st october
----
charts and ows subs are confirmed - cp details are agreed upon - and therefore we are now fully and clean fixed

below pls find final fixture recap:


mv "saturnus" as described in attachment for clarification:

hatch 1: Forward half length 8.8x width 16.0m
          aft half length 8.8x width 25.5
          ie full length of hatch no.1 is 17.6m

imo nr: 9382724
flag: norwegian

dispows: Messrs oldendorf carriers gmbh & Co KG, luebeck germany dispows p+i club: gard
For
- Account: Barna Conshipping, S.L., Barcelona

- no option partcargo

- Barcelona / norfolk  + Mobile + Houston +
  Altamira, 1 gsb all ends
  (in this rotation)
  (Owners to satisfy themselves abt. restrictions at both l/d ports)
  disch terminal:
  norfolk, newport news marine terminal.
  Mobile: Alabama State Docks.
  Houston: Greensport terminal.
  Altamira: berth No 4
- Abt 17.620 mts steel beams max 60' length, as follows:
  Abt 2.420 mts for Norfolk + Abt 2.600 mts for Mobile + Abt 8.970 mts
  for Houston + Abt 3.630 mts for Altamira
  (pls also see attached preliminary cargo/packinglist)
- Laycan 25th/30th Oct 08 - eta 25/26th oct agw/wp
- Freight : USD 88.-- pmt intaken fios dunnaged
  Any lashing/securing requested by Master to be for Owners' account - - Freight payable 100 pct less commission within 3 banking days on
  signing bs/l directly into Owners nominated Bankers
- Freight deemed earned on completion of loading, discountless and non



returnable ship and /or cargo lost or not lost
- Load 2000 pwwd satshex eiu
- Discharge CQD
- At load port, Laytime not to count from Friday 17:00 hrs or 17:00
  hrs prior a Holiday until Monday 08:00 hrs or 08:00 hrs next working
  day eiu
- At load port, laytime before commencement of laytime not to count
  eiu
- Laytime non reversible between load/discharge ports
- NOR to be tendered during laycan only
- At load gcn 2pm/8am clause to apply
- Demurrage at load: USD 15.000.-- pdpr/fd
- Any taxes or/and dues on cargo and/or freight to be for
  Charterers/Receivers' account.
- Any taxes and/or dues on vessel, including all charges falling under
  customary port charges, to be for Owners' account.
- Dock dues at disch port, if any, to be for Owners' account
- Chart agent loading
  Agents at load: Messrs. NAVIERA BARCELONESA
  Tel. +34 932986461
  Fax +34 932986463
  Mobile + 34 629708014
  PIC CARLOS GINER
  (carlos.giner@intramediterraneo.es)
- ows agent at dischports - to be advised
- Owners to allow the use of vssl's own cranes to load/discharge the
  cargo, but chrts/shippers/receivers to arrange at their time, risk
  and expenses own crane drivers.
- BIMCO ISPS Clause
- Bills of Lading to be marked "Clean on Board" and "Freight prepaid"
- In case Master has any remarks, same to be inserted on the mate's
  receipt only, and Chrts will release a LOI in Owners P&I wording.
- If required by Charterers, Owners to instruct agents to issue/sign
  Bills of Lading on Master/Owners behalf: FOR AND ON BEHALF OF THE
  MASTER ...Mr XXX, M/V '.....'
- Owners to authorize Agents at loadport to release Original Bills of
  Lading upon receipt of 100pct freight on Owners nominated bank
  account.
- In case original Bills of Lading not available upon discharging
  Owners to agree to discharge the cargo without presentation of
  original Bills of Lading, against Loi in Owners P&I wording, into
  Agents custody and Charterers/Shippers to provide Original Bills of
  Lading to Agents as soon as possible.
- During loading, Chrts are allowed to issue Bs/L for cargo actually
  loaded.
- bsl dated 31st oct 2008 for cargo actually loaded on board
  by  this date.
- Owners to issue a certificate signed by Owners/Agents certifying
  that the carrying vessel is P&I covered, and ISM and ISPS fitted for
  the duration of this Charter Party.

- 2,5 pct to barna plus  1,25 Echo plus 1,25 AMC

- other terms/conds as per chrts exec gcn 94 c/p, attached hereto,
  wfa (apart from mainterms agreed above and obvious and logical
  alterations:

- cl 20 to be amended along mainterms agreed above
- cl 21 before "expense" insert "risk and"
       otherwise amend along mainterms agreed above
- cl 31 delete 2nd line

- cl 34 - instead insert Barna Conshipping,
       email: ships@barnasl.com

- cl 42 to read
  time lost by reason of all or any of the foll clauses shall not be
computed in the loading time viz: war, rebellion, tumult civil
  commotions, political disturbances and riots, whether partial or
  general bad weather, intervention of customs and/or constituted
  authorities or partial or total stoppage of railways.

End

thnks vm for this fixture and now looking forward to a smooth operation and cooperation

rgds

③




**RECOMMENDED**
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL
UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)
(To be used for trades for which no specially approved form is in force)
CODE NAME: "G E N C O N"

Part I

**1. Shipbroker**

*BAI SEA CHARTERING, S. L.*
*San Agustín, 2, 1ª dcha.*
*28014 Madrid*
*Spain* (216/08)

**2. Place and date**
*Madrid, 20th June, 2008*

**3. Owners/Place of business (Cl. 1)**

**4. Charterers/Place of business (Cl. 1)**
*Messrs. BARNA CONSHIPPING, S.L. (Celsa Group)*
*Poligono Industrial San Vicente, s/n*
*08755 Castellbisbal - Barcelona*
*SPAIN*

**5. Vessel's name (Cl. 1)**
*M/V*

**6. GT/NT (Cl. 1)**
*See Clause 40*

**7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)**
*See Clause 40*

**8. Present position (Cl. 1)**

**9. Expected ready to load (abt.) (Cl. 1)**
*26th / 27th June, 2008*

*BAI SEA CHARTERING, S. L.*
*San Agustín, 2, 1º dcha.*
*Trading 28014 MADRID (SPAIN)*
*+34 91 360 19 30*

**10. Loading port or place (Cl. 1)**
*One good safe berth BARCELONA (*)*

**11. Discharging port or place (Cl. 1)**
*One good safe berth*

**12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)**
*Minimum 2.000 metric tons up to full and complete cargo of steel rebars, 12 meters length.*

**13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)**
*EL        · metric ton intaken FIOS*
*Dunnaged, lashing and securing not necessary,*
*if master required same to be for Owners' account.*

**14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)**
*See Clause 20*

**15. State if vessel's cargo handling gear shall not be used (Cl. 5)**

**16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b) If total laytime for load. and disch., fill in c) only) (Cl. 6)**

**17. Shippers/Place of business (Cl. 6)**

a) Laytime for loading
*See Clause 21*

**18. Agents (loading) (Cl. 6)**
*See Clause 41*

b) Laytime for discharging
*See Clause 21*

**19. Agents (discharging) (Cl. 6)**
*See Clause 41*

c) Total laytime for loading and discharging

**20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)**
*EUR        · per day, pro-rata / Free despatch*

**21. Cancelling date (Cl. 9)**
*27th June, 2008*

**22. General Average to be adjusted at (Cl. 12)**

**23. Freight Tax (state if for the Owners' account) (Cl. 13 (c))**

**24. Brokerage commission and to whom payable (Cl. 15)**
*2,50% Address Commission +*
*1,25% Brokerage Commission to Bai Sea Chartering*

**25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration (if not filled in 19 (a) shall apply) (Cl. 19)**

*English Law to apply. Arbitration in London*

**26. Additional clauses covering special provisions, if agreed**
*Additional Clauses from 20 to 47, both inclusive, as attached herewith, are deemed to be fully incorporated to this Charter Party.*

(a) State maximum amount for small claims/shortened arbitration (Cl. 19)

*(*) Owners to satisfy themselves about restrictions at both load/discharge ports.*

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the even of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

**Signature (Owners)**

**Signature (Charterers)**

④

**1.** It is agreed between the party mentioned in Box 3 as the Owners of the Vessel  1
named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number  2
of metric tons of deadweight capacity all told on summer loadline stated in Box  3
7, now in position as stated in Box 8 and expected ready to load under this  4
Charter Party about the date indicated in Box 9, and the party mentioned as the  5
Charterers in Box 4 that:  6
The said Vessel shall, as soon as her prior commitments have been completed,  7
proceed to the loading port(s) or place(s) stated in Box 10 ~~or so near thereto as~~  8
~~she may safely get and lie always afloat,~~ and there load a full and complete  9
cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and  10
responsibility) as stated in Box 12, which the Charterers bind themselves to  11
ship, and being so loaded the Vessel shall proceed to the discharging port(s) or  12
place(s) stated in Box 11 as ordered on signing Bills of Lading, ~~or so near~~  13
~~thereto as she may safely get and lie always afloat,~~ and there deliver the cargo.  14

**2. Owners' Responsibility Clause**  15
The Owners are to be responsible for loss of or damage to the goods or for  16
delay in delivery of the goods only in case the loss, damage or delay has been  17
caused by personal want of due diligence on the part of the Owners or their  18
Manager to make the Vessel in all respects seaworthy and to secure that she is  19
properly manned, equipped and supplied, or by the personal act or default of  20
the Owners or their Manager.  21
~~And the Owners are not responsible for loss, damage or delay arising from any~~  22
~~other cause whatsoever, even from the neglect or default of the Master or crew~~  23
~~or some other person employed by the Owners on board or ashore for whose~~  24
~~acts they would, but for this Clause, be responsible, or from unseaworthiness of~~  25
~~the Vessel on loading or commencement of the voyage or at any time~~  26
~~whatsoever.~~  27

**3. Deviation Clause**  28
The Vessel has liberty to call at any port or ports in any order, for any purpose,  29
to sail without pilots, to tow and/or assist Vessels in all situations, and also to  30
deviate for the purpose of saving life and/or property.  31

**4. Payment of Freight** _See Clause 20_  32
~~(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the~~  33
~~intaken quantity of cargo.~~  34
~~(b) Prepaid. If according to Box 13 freight is to be paid on shipment, it shall be~~  35
~~deemed earned and non returnable, Vessel and/or cargo lost or not lost. Neither~~  36
~~the Owners nor their agents shall be required to sign or endorse bills of 37~~  37
~~lading showing freight prepaid unless the freight due to the Owners has~~  38
~~actually been paid.~~  39
~~(c) On delivery. If according to Box 13 freight, or part thereof, is payable at~~  40
~~destination it shall not be deemed earned until the cargo is thus delivered.~~  41
~~Notwithstanding the provisions under (a), if freight or part thereof is payable on~~  42
~~delivery of the cargo the Charterers shall have the option of paying the freight~~  43
~~on delivered weight/quantity provided such option is declared before breaking~~  44
~~bulk and the weight/quantity can be ascertained by official weighing machine,~~  45
~~joint draft survey or tally.~~  46
~~Cash for Vessel's ordinary disbursements at the port of loading to be advanced~~  47
~~by the Charterers, if required, at highest current rate of exchange, subject to~~  48
~~two (2) per cent to cover insurance and other expenses.~~  49

**5. Loading/Discharging**  50
_(a) Costs/Risks_  51
The cargo shall be brought into the holds, loaded, stowed and/or trimmed,  52
tallied, lashed and/or secured and taken from the holds and discharged by the  53
Charterers, free of any risk, liability and expense whatsoever to the Owners. The  54
Charterers shall provide and lay all dunnage material as required for the  55
proper stowage and protection of the cargo on board, the Owners allowing the  56
use of all dunnage available on board. ~~The Charterers shall be responsible for~~  57
~~and pay the cost of removing their dunnage after discharge of the cargo under~~  58
~~this Charter Party and time to count until dunnage has been removed.~~  59
_(b) Cargo Handling Gear_  60
Unless the Vessel is gearless or unless it has been agreed between the parties  61
that the Vessel's gear shall not be used and stated as such in Box 15, the  62
Owners shall throughout the duration of loading/discharging give free use of  63
the Vessel's cargo handling gear and of sufficient motive power to operate all  64
such cargo handling gear. All such equipment to be in good working order.  65
Unless caused by negligence of the stevedores, time lost by breakdown of the  66
Vessel's cargo handling gear or motive power - pro rata the total number of  67
cranes/winches required at that time for the loading/discharging of cargo  68
under this Charter Party - shall not count as laytime or time on demurrage.  69
On request the Owners shall provide free of charge cranemen/winchmen from  70
the crew to operate the Vessel's cargo handling gear, unless local regulations  71
prohibit this, in which latter event shore labourers shall be for the account of the  72
Charterers. Cranemen/winchmen shall be under the Charterers' risk and  73
responsibility and as stevedores to be deemed as their servants but shall  74

always work under the supervision of the Master.  75
~~(c) Stevedore Damage~~  76
~~The Charterers shall be responsible for damage (beyond ordinary wear and~~  77
~~tear) to any part of the Vessel caused by Stevedores. Such damage shall be~~  78
~~notified as soon as reasonably possible by the Master to the Charterers or their~~  79
~~agents and to their Stevedores, failing which the Charterers shall not be held~~  80
~~responsible. The Master shall endeavour to obtain the Stevedores' written~~  81
~~acknowledgement of liability.~~  82
~~The Charterers are obliged to repair any stevedore damage prior to completion~~  83
~~of the voyage, but must repair stevedore damage affecting the Vessel's~~  84
~~seaworthiness or class before the Vessel sails from the port where such~~  85
~~damage was caused or found. All additional expenses incurred shall be for the~~  86
~~account of the Charterers and any time lost shall be for the account of and shall~~  87
~~be paid to the Owners by the Charterers at the demurrage rate.~~  88

**6. Laytime** _See Clause 21_  89
_* (a) Separate laytime for loading and discharging_  90
The cargo shall be loaded within the number of running days/hours as  91
indicated in Box 16, weather ~~permitting, Sundays and holidays excepted,~~  92
~~unless used, in which event time used shall count.~~  93
The cargo shall be discharged within the number of running days/hours as  94
indicated in Box 16, weather ~~permitting, Sundays and holidays excepted,~~  95
~~unless used, in which event time used shall count.~~  96
_(b) Total laytime for loading and discharging_  97
~~The cargo shall be loaded and discharged within the number of total running~~  98
~~days/hours as indicated in Box 16, weather permitting, Sundays and holidays~~  99
~~excepted, unless used, in which event time used shall count.~~  100
_(c) Commencement of laytime (loading and discharging)_  101
~~Laytime for loading and discharging shall commence at 13.00 hours, if notice of~~  102
~~readiness is given up to and including 12.00 hours, and at 06.00 hours next~~  103
~~working day if notice given during office hours after 12.00 hours. Notice of~~  104
~~readiness at loading port to be given to the Shippers named in Box 17 or if not~~  105
~~named, to the Charterers or their agents named in Box 18. Notice of readiness~~  106
~~at the discharging port to be given to the Receivers or, if not known, to the~~  107
~~Charterers or their agents named in Box 19.~~  108
~~If the loading/discharging berth is not available on the Vessel's arrival at or off~~  109
~~the port of loading/discharging, the Vessel shall be entitled to give notice of~~  110
~~readiness within ordinary office hours on arrival there, whether in free pratique~~  111
~~or not, whether customs cleared or not. Laytime or time on demurrage shall~~  112
~~then count as if she were in all respects ready for loading/ 113~~  113
~~discharging provided that the Master warrants that she is in fact ready in all~~  114
~~respects. Time used in moving from the place of waiting to the loading/~~  115
~~discharging berth shall not count as laytime.~~  116
~~If, after inspection, the Vessel is found not to be ready in all respects to load/~~  117
~~discharge time lost after the discovery thereof until the Vessel is again ready to~~  118
~~load/discharge shall not count as laytime.~~  119
~~* Time used before commencement of laytime shall count.~~  120
~~Indicate alternative (a) or (b) as agreed, in Box 16.~~  121

**7. Demurrage**  122
Demurrage at the loading and discharging port is payable by the Charterers at  123
the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for  124
any part of a day. Demurrage shall fall due day by day and shall be payable  125
upon receipt of the Owners' invoice.  126
~~In the event the demurrage is not paid in accordance with the above, the~~  127
~~Owners shall give the Charterers 96 running hours written notice to rectify the~~  128
~~failure. If the demurrage is not paid at the expiration of this time limit and if the~~  129
~~vessel is in or at the loading port, the Owners are entitled at any time to~~  130
~~terminate the Charter Party and claim damages for any losses caused thereby.~~  131

**8. Lien Clause**  132
The Owners shall have a lien on the cargo and ~~on all sub freights payable in~~  133
~~respect of the cargo,~~ for freight, deadfreight, demurrage, ~~claims for damages~~  134
~~and for all other amounts due under this Charter Party including costs of~~  135
~~recovering same.~~  136

**9. Cancelling Clause**  137
(a) Should the Vessel not be ready to load (whether in berth or not) on the  138
cancelling date indicated in Box 21, the Charterers shall have the option of  139
cancelling this Charter Party.  140
~~(b) Should the Owners anticipate that, despite the exercise of due diligence,~~  141
~~the Vessel will not be ready to load by the cancelling date, they shall notify the~~  142
~~Charterers thereof without delay stating the expected date of the Vessel's~~  143
~~readiness to load and asking whether the Charterers will exercise their option~~  144
~~of cancelling the Charter Party, or agree to a new cancelling date.~~  145
~~Such option must be declared by the Charterers within 48 running hours after~~  146
~~the receipt of the Owners' notice. If the Charterers do not exercise their option~~  147
~~of cancelling, then this Charter Party shall be deemed amended~~  148

BAI SEA CHARTER
San Agustin, 2, 1° dcha.
28014 MADRID (SPAIN)
+34 91 360 19 30



"Gencon" Charter (As Revised 1922, 1976 and 1994)

~~the seventh day after the new readiness date stated in the Owners' notification~~ 149
~~to the Charterers shall be the new cancelling date.~~ 150
~~The provisions of sub-clause (b) of this Clause shall operate only once, and in~~ 151
~~case of the Vessel's further delay, the Charterers shall have the option of~~ 152
~~cancelling the Charter Party as per sub-clause (a) of this Clause.~~ 153

**10. Bills of Lading** 154
Bills of Lading shall be presented and signed by the Master as per the 155
"Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter 156
Party, or by the Owners' agents provided written authority has been given by 157
Owners to the agents, a copy of which is to be furnished to the Charterers. ~~The~~ 158
~~Charterers shall indemnify the Owners against all consequences or liabilities~~ 159
~~that may arise from the signing of bills of lading as presented to the extent that~~ 160
~~the terms or contents of such bills of lading impose or result in the imposition of~~ 161
~~more onerous liabilities upon the Owners than those assumed by the Owners~~ 162
~~under this Charter Party.~~ 163

**11. Both-to-Blame Collision Clause** 164
If the Vessel comes into collision with another vessel as a result of the 165
negligence of the other vessel and any act, neglect or default of the Master, 166
Mariner, Pilot or the servants of the Owners in the navigation or in the 167
management of the Vessel, the owners of the cargo carried hereunder will 168
indemnify the Owners against all loss or liability to the other non-carrying 169
vessel or her owners in so far as such loss or liability represents loss of, or 170
damage to, or any claim whatsoever of the owners of said cargo, paid or 171
payable by the other or non-carrying vessel or her owners to the owners of said 172
cargo and set-off, recouped or recovered by the other or non-carrying vessel 173
or her owners as part of their claim against the carrying Vessel or the Owners. 174
The foregoing provisions shall also apply where the owners, operators or those 175
in charge of any vessel or vessels or objects other than, or in addition to, the 176
colliding vessels or objects are at fault in respect of a collision or contact. 177

**12. General Average and New Jason Clause** 178
General Average shall be adjusted in London unless otherwise agreed in Box 179
22 according to York-Antwerp Rules 1994 and any subsequent modification 180
thereof. ~~Proprietors of cargo to pay the cargo's share in the general expenses~~ 181
~~even if same have been necessitated through neglect or default of the Owners'~~ 182
~~servants (see Clause 2).~~ 183
~~If General Average is to be adjusted in accordance with the law and practice of~~ 184
~~the United States of America, the following Clause shall apply: "In the event of~~ 185
~~accident, danger, damage or disaster before or after the commencement of the~~ 186
~~voyage, resulting from any cause whatsoever, whether due to negligence or~~ 187
~~not, for which, or for the consequence of which, the Owners are not~~ 188
~~responsible, by statute, contract or otherwise, the cargo shippers, consignees~~ 189
~~or the owners of the cargo shall contribute with the Owners in General Average~~ 190
~~to the payment of any sacrifices, losses or expenses of a General Average~~ 191
~~nature that may be made or incurred and shall pay salvage and special charges~~ 192
~~incurred in respect of the cargo. If a salving vessel is owned or operated by the~~ 193
~~Owners, salvage shall be paid for as fully as if the said salving vessel or vessels~~ 194
~~belonged to strangers. Such deposit as the Owners, or their agents, may deem~~ 195
~~sufficient to cover the estimated contribution of the goods and any salvage and~~ 196
~~special charges thereon shall, if required, be made by the cargo, shippers,~~ 197
~~consignees or owners of the goods to the Owners before delivery.".~~ 198

**13. Taxes and Dues Clause** 199
(a) *On Vessel* -The Owners shall pay all dues, charges and taxes customarily 200
levied on the Vessel, howsoever the amount thereof may be assessed. 201
(b) *On cargo* -The Charterers shall pay all dues, charges, duties and taxes 202
customarily levied on the cargo, howsoever the amount thereof may be 203
assessed. 204
(c) *On freight* -Unless otherwise agreed in Box 23, taxes levied on the freight 205
shall be for the Charterers' account. 206

**14. Agency**                    *Charterers* 207
In every case the ~~Owners~~ shall appoint their own Agent both at the port of 208
loading and the port of discharge. 209

**15. Brokerage** 210
A brokerage at the rate stated in Box 24 on the freight, dead-freight 211
and demurrage earned is due to the party mentioned in Box 24. 212
In case of non-execution 1/3 of the brokerage on the estimated amount of 213
freight to be paid by the party responsible for such non-execution to the 214
Brokers as indemnity for the latter's expenses and work. In case of more 215
voyages the amount of indemnity to be agreed. 216

**16. General Strike Clause** 217
(a) If there is a strike or lock-out affecting or preventing the actual loading of 218
cargo, or any part of it, when the Vessel is ready to proceed from her last port or 219

at any time during the voyage to the port or ports of loading or after her arrival 220
there, the Master or the Owners may ask the Charterers to declare, that they 221
agree to reckon the laydays as if there were no strike or lock-out. Unless the 222
Charterers have given such declaration in writing (by telegram, if necessary) 223
within 24 hours, the Owners shall have the option of cancelling this Charter 224
Party. If part cargo has already been loaded, the Owners must proceed with 225
same, (freight payable on loaded quantity only) having liberty to complete with 226
other cargo on the way for their own account. 227
(b) If there is a strike or lock-out affecting or preventing the actual discharging 228
of the cargo on or after the Vessel's arrival at or off port of discharge and same 229
has not been settled within 48 hours, the Charterers shall have the option of 230
keeping the Vessel waiting until such strike or lock-out is at an end against 231
paying half demurrage after expiration of the time provided for discharging 232
until the strike or lock-out terminates and thereafter full demurrage shall be 233
payable until the completion of discharging, or of ordering the Vessel to a safe 234
port where she can safely discharge without risk of being detained by strike or 235
lock-out. Such orders to be given within 48 hours after the Master or the 236
Owners have given notice to the Charterers of the strike or lock-out affecting 237
the discharge. On delivery of the cargo at such port, all conditions of this 238
Charter Party and of the Bill of Lading shall apply and the Vessel shall receive 239
the same freight as if she had discharged at the original port of destination, 240
except that if the distance to the substituted port exceeds 100 nautical miles, 241
the freight on the cargo delivered at the substituted port to be increased in 242
proportion. 243
(c) Except for the obligations described above, neither the Charterers nor the 244
Owners shall be responsible for the consequences of any strikes or lock-outs 245
preventing or affecting the actual loading or discharging of the cargo. 246

**17. War Risks ("Voywar 1993")** 247
(1) For the purpose of this Clause, the words: 248
(a) The "Owners" shall include the shipowners, bareboat charterers, 249
disponent owners, managers or other operators who are charged with the 250
management of the Vessel, and the Master; and 251
(b) "War Risks" shall include any war (whether actual or threatened), act of 252
war, civil war, hostilities, revolution, rebellion, civil commotion, warlike 253
operations, the laying of mines (whether actual or reported), acts of piracy, 254
acts of terrorists, acts of hostility or malicious damage, blockades 255
(whether imposed against all Vessels or imposed selectively against 256
Vessels of certain flags or ownership, or against certain cargoes or crews 257
or otherwise howsoever), by any person, body, terrorist or political group, 258
or the Government of any state whatsoever, which, in the reasonable 259
judgement of the Master and/or the Owners, may be dangerous or are 260
likely to be or to become dangerous to the Vessel, her cargo, crew or other 261
persons on board the Vessel. 262
(2) If at any time before the Vessel commences loading, it appears that, in the 263
reasonable judgement of the Master and/or the Owners, performance of 264
the Contract of Carriage, or any part of it, may expose, or is likely to expose, 265
the Vessel, her cargo, crew or other persons on board the Vessel to War 266
Risks, the Owners may give notice to the Charterers cancelling this 267
Contract of Carriage, or may refuse to perform such part of it as may 268
expose, or may be likely to expose, the Vessel, her cargo, crew or other 269
persons on board the Vessel to War Risks; provided always that if this 270
Contract of Carriage provides that loading or discharging is to take place 271
within a range of ports, and at the port or ports nominated by the Charterers 272
the Vessel, her cargo, crew, or other persons onboard the Vessel may be 273
exposed, or may be likely to be exposed, to War Risks, the Owners shall 274
first require the Charterers to nominate any other safe port which lies 275
within   he range for loading or discharging, and may only cancel this 276
Contract of Carriage if the Charterers shall not have nominated such safe 277
port or ports within 48 hours of receipt of notice of such requirement. 278
(3) The Owners shall not be required to continue to load cargo for any voyage, 279
or to sign Bills of Lading for any port or place, or to proceed or continue on 280
any voyage, or on any part thereof, or to proceed through any canal or 281
waterway, or to proceed to or remain at any port or place whatsoever, 282
where it appears, either after the loading of the cargo commences, or at 283
any stage of the voyage thereafter before the discharge of the cargo is 284
completed, that, in the reasonable judgement of the Master and/or the 285
Owners, the Vessel, her cargo (or any part thereof), crew or other persons 286
on board the Vessel (or any one or more of them) may be, or are likely to be, 287
exposed to War Risks. If it should so appear, the Owners may by notice 288
request the Charterers to nominate a safe port for the discharge of the 289
cargo or any part thereof, and if within 48 hours of the receipt of such 290
notice, the Charterers shall not have nominated such a port, the Owners 291
may discharge the cargo at any safe port of their choice (including the port 292
of loading) in complete fulfilment of the Contract of Carriage. The Owners 293
shall be entitled to recover from the Charterers the extra expenses of such 294
discharge and, if the discharge takes place at any port other than the 295
loading port, to receive the full freight as though the cargo had been 296

BAI SEA CHARTERING, S.L.
San Agustín, 2, 1° dcha.
28014 MADRID (SPAIN)
+34 91 360 19 30



6



"Gencon" Charter (As Revised 1922,1976 and 1994)

carried to the discharging port and if the extra distance exceeds 100 miles, 297
to additional freight which shall be the same percentage of the freight 298
contracted for as the percentage which the extra distance represents to 299
the distance of the normal and customary route, the Owners having a lien 300
on the cargo for such expenses and freight. 301

(4)   If at any stage of the voyage after the loading of the cargo commences, it 302
appears that, in the reasonable judgement of the Master and/or the 303
Owners, the Vessel, her cargo, crew or other persons on board the Vessel 304
may be, or are likely to be, exposed to War Risks on any part of the route 305
(including any canal or waterway) which is normally and customarily used 306
in a voyage of the nature contracted for, and there is another longer route 307
to the discharging port, the Owners shall give notice to the Charterers that 308
this route will be taken. In this event the Owners shall be entitled, if the total 309
extra distance exceeds 100 miles, to additional freight which shall be the 310
same percentage of the freight contracted for as the percentage which the 311
extra distance represents to the distance of the normal and customary 312
route. 313

(5)   The Vessel shall have liberty:- 314
(a) to comply with all orders, directions, recommendations or advice as to 315
departure, arrival, routes, sailing in convoy, ports of call, stoppages, 316
destinations, discharge of cargo, delivery or in any way whatsoever which 317
are given by the Government of the Nation under whose flag the Vessel 318
sails, or other Government to whose laws the Owners are subject, or any 319
other Government which so requires, or any body or group acting with the 320
power to compel compliance with their orders or directions; 321
(b) to comply with the orders, directions or recommendations of any war 322
risks underwriters who have the authority to give the same under the terms 323
of the war risks insurance; 324
(c) to comply with the terms of any resolution of the Security Council of the 325
United Nations, any directives of the European Community, the effective 326
orders of any other Supranational body which has the right to issue and 327
give the same, and with national laws aimed at enforcing the same to which 328
the Owners are subject, and to obey the orders and directions of those who 329
are charged with their enforcement; 330
(d) to discharge at any other port any cargo or part thereof which may 331
render the Vessel liable to confiscation as a contraband carrier; 332
(e) to call at any other port to change the crew or any part thereof or other 333
persons on board the Vessel when there is reason to believe that they may 334
be subject to internment, imprisonment or other sanctions; 335
(f) where cargo has not been loaded or has been discharged by the 336
Owners under any provisions of this Clause, to load other cargo for the 337
Owners' own benefit and carry it to any other port or ports whatsoever, 338
whether backwards or forwards or in a contrary direction to the ordinary or 339
customary route. 340

(6)   If in compliance with any of the provisions of sub-clauses (2) to (5) of this 341
Clause anything is done or not done, such shall not be deemed to be a 342
deviation, but shall be considered as due fulfilment of the Contract of 343
Carriage. 344

18.  General Ice Clause 345
Port of loading 346
(a) In the event of the loading port being inaccessible by reason of ice when the 347
Vessel is ready to proceed from her last port or at any time during the voyage or 348
on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the 349
Master for fear of being frozen in is at liberty to leave without cargo, and this 350
Charter Party shall be null and void. 351
(b) If during loading the Master, for fear of the Vessel being frozen in, deems it 352
advisable to leave, he has liberty to do so with what cargo he has on board and 353
to proceed to any other port or ports with option of completing cargo for the 354
Owners' benefit for any port or ports including port of discharge. Any part 355
cargo thus loaded under this Charter Party to be forwarded to destination at the 356
Vessel's expense but against payment of freight, provided that no extra 357
expenses be thereby caused to the Charterers, freight being paid on quantity 358
delivered (in proportion if lumpsum), all other conditions as per this Charter 359
Party. 360
(c) In case of more than one loading port, and if one or more of the ports are 361
closed by ice, the Master or the Owners to be at liberty either to load the part 362
cargo at the open port and fill up elsewhere for their own account as under 363
section (b) or to declare the Charter Party null and void unless the Charterers 364
agree to load full cargo at the open port. 365

Port of discharge 366
(a) Should ice prevent the Vessel from reaching port of discharge the 367
Charterers shall have the option of keeping the Vessel waiting until the re- 368
opening of navigation and paying demurrage or of ordering the Vessel to a safe 369
and immediately accessible port where she can safely discharge without risk of 370
detention by ice. Such orders to be given within 48 hours after the Master or the 371
Owners have given notice to the Charterers of the impossibility of reaching port 372

of destination. 373
(b) If during discharging the Master for fear of the Vessel being frozen in deems 374
it advisable to leave, he has liberty to do so with what cargo he has on board and 375
to proceed to the nearest accessible port where she can safely discharge. 376
(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall 377
apply and the Vessel shall receive the same freight as if she had discharged at 378
the original port of destination, except that if the distance of the substituted port 379
exceeds 100 nautical miles, the freight on the cargo delivered at the substituted 380
port to be increased in proportion. 381

382
19.  Law and Arbitration 383
• (a) This Charter Party shall be governed by and construed in accordance with 384
English law and any dispute arising out of this Charter Party shall be referred to 384
arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or 385
any statutory modification or re-enactment thereof for the time being in force. 386
Unless the parties agree upon a sole arbitrator, one arbitrator shall be 387
appointed by each party and the arbitrators so appointed shall appoint a third 388
arbitrator, the decision of the three-man tribunal thus constituted or any two of 389
them, shall be final. On the receipt by one party of the nomination in writing of 390
the other party's arbitrator, that party shall appoint their arbitrator within 391
fourteen days, failing which the decision of the single arbitrator appointed shall 392
be final. 393
For disputes where the total amount claimed by either party does not exceed 394
the amount stated in Box 25** the arbitration shall be conducted in accordance 395
with the Small Claims Procedure of the London Maritime Arbitrators 396
Association. 397

• (b) This Charter Party shall be governed by and construed in accordance with 398
Title 9 of the United States Code and the Maritime Law of the United States and 399
should any dispute arise out of this Charter Party, the matter in dispute shall be 400
referred to three persons at New York, one to be appointed by each of the 401
parties hereto, and the third by the two so chosen; their decision or that of any 402
two of them shall be final, and for purpose of enforcing any award, this 403
agreement may be made a rule of the Court. The proceedings shall be 404
conducted in accordance with the rules of the Society of Maritime Arbitrators, 405
Inc. 406
For disputes where the total amount claimed by either party does not exceed 407
the amount stated in Box 25** the arbitration shall be conducted in accordance 408
with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, 409
Inc. 410

• (c) Any dispute arising out of this Charter Party shall be referred to arbitration at 411
the place indicated in Box 25, subject to the procedures applicable there. The 412
laws of the place indicated in Box 25 shall govern this Charter Party. 413
(d) If Box 25 in Part 1 is not filled in, sub-clause (a) of this Clause shall apply. 414
• (a), (b) and (c) are alternatives; indicate alternative agreed in Box 25. 415
** Where no figure is supplied in Box 25 in Part 1, this provision only shall be void but 416
the other provisions of this Clause shall have full force and remain in effect. 417

BAI SEA CHARTERING, S.L.
San Agustín, 2, 1° dcha.
28014 MADRID (SPAIN)
+34 91 360 19 30



COPY

**ADDITIONAL CLAUSES TO THE CHARTER PARTY DATED MADRID,**
THE 20th JUNE 2008 BETWEEN

MESSRS.

MESSRS. }

### Clause 20

100% of the freight, less address commission, payable into Owners nominated bank-account latest 3 (three) banking days after completion of loading and presentation of freight invoice (advanced by fax) and signing / releasing Bills of Lading, but in any case freight payable before breaking bulk and free of bank charges.

Freight is deemed earned once loaded and non returnable vessel and/or cargo lost or not lost.

Bills of Lading to be marked "Clean on board" and "Freight payable as per Charter Party".

In case Master has any remarks, same to be inserted on the Mates' Receipt only, and Charterers will release a LOI in Owners P&I wording.

Demurrage if any payable within 10 days after presentation all documents Notice of Readiness, Statement of Fact, Time Sheets, etc.

### Clause 21

Cargo to be loaded/discharged by Shippers'/Receivers' Stevedores free of expense to the Vessel.

Cargo to be loaded at the average rate of 1.500 metric tons per weather working day of 24 consecutive hours, Saturdays, Sundays and Holidays excluded, even if used.

Cargo to be discharged at the average rate of 800 metric tons per weather working day of 24 consecutive hours, Thursdays, Fridays and Holidays excluded, even if used.

At load, laytime from Friday 17,00 hours or any other day preceding a holiday until 08.00 hours next Monday or following working day not to count, unless used.

At discharge, laytime from Wednesday 17.00 hours or any other day preceding a holiday until 08.00 hours next Saturday or following working day not to count, even if used.

Laytime used before commencing of laytime not to count.

Laytime to be non reversible between load/discharge ports.

Notice of Readiness to be given during Laycan.
Notice to be given WWWW by phone/fax/cable via Agents both ends.

### Clause 22

Any taxes and/or dues on cargo and/or freight to be for Charterers/ Receivers' account.

Any taxes and/or dues on vessel, including all charges falling under customary port charges, to be for Owners' account.

Dock dues at discharging port, if any, to be for Owners' account.

### Clause 23

Vessel's holds to be clean and dry before tendering Notice of Readiness and to Shippers' satisfaction. In case of dispute, the opinion of an independent surveyor shall apply and bind both parties.

### Clause 24

Vessel to supply sufficient lights, as on board, for night work if required, free of expenses to the Charterers/Shippers.

BAI SEA CHARTERING, S. L.
San Agustín, 2, 1º dcha.
28014 MADRID (SPAIN)
+34 91 360 19 30

⑧

**ADDITIONAL CLAUSES TO THE CHARTER PARTY DATED MADRID,
THE 20ᵗʰ JUNE, 2008 BETWEEN**

MESSRS.

MESSRS. --------

**Clause 25**

Owners to advance to the Agents at loading / discharging port necessary funds for vessel's disbursements prior to vessel's arrival, failing which time will not count unless Agents are in the possession of the disbursement claimed and Owners are responsible.

**Clause 26**

Overtime, if any, at loadport to be for the account of the party ordering same. Overtime ordered by Port Authorities to be for Charterers' account. Officers' and Crew's overtime always to be for Owners' account.

**Clause 27**

Opening and closing of hatches to be effected by Crew and in Owners' time, provided port regulations permit same, otherwise shorehands to be employed at Charterers' expenses.

**Clause 28**

Stevedores, although appointed by Shippers/Charterers/Receivers to be under the control and direction of the Master. Charterers/Receivers shall not be responsible for the faults or acts of the Stevedores at load/discharging ports. Claim for damages, if any, to be settled directly between Owners and Stevedores. In case Owners fail, Charterers to assist to obtain amicable solution.

**Clause 29**

Arbitration, if any, to be held in London and English law to apply.

**Clause 30**

New Jason Clause, Both to Blame Collision Clause, P and I Bunkering Clause, Paramount Clause, are fully deemed incorporated in this Charter Party and to apply.

**Clause 31**

If required by Charterers, Owners to instruct Agents to issue/sign Bills of Lading on Owners/Master behalf.

In case later ship's arrival Bills of Lading to be dated latest on the 30ᵗʰ of June.

In case freight prepaid Bills of Lading to be issued same to be released by loadport Agents upon Owners written confirmation that funds irrevocably received on Owners nominated bank account.

In case Original Bills of Lading not available upon discharging Owners to agree to discharge the cargo only in custom bonded store and to be released upon written confirmation of Agents of receipt of Originals.

Bills of lading to be signed/released at loading port, after completion of loading and before Vessel's departure.
Owners/Master to be responsible for the number of bundles and/or pieces and/or units loaded.

**Clause 32**

The Owners confirm that the Vessel is suitable for forklift operations in all cargo compartments. No cargo is to be loaded into tweendecks, deep tanks or other places not easily accessible. The Owners warrant that the Vessel is able to uplift the cargo as described.

Vessel to have full protection and indemnity. Insurance coverage to remain in effect throughout completion of discharge operation at destination. Vessel's holds/hatches to be fully workable accessible and unobstructed for discharging purposes at destination. Vessel to supply all running gear and other necessary equipment as well as sufficient power lighting gear at full capacity simultaneously day and night and to provide for sufficient lights on deck and in holds.

BATSEA PORT TERMINAL, S. L.
San Agustín, 2, 1º dcha.
28014 MADRID (SPAIN)
+34 91 360 19 30



ADDITIONAL CLAUSES TO THE CHARTER PARTY DATED MADRID,
THE 20th JUNE, 2008 BETWEEN

MESSRS.

M)

**Clause 33**

Any damage noticed on cargo to be reported immediately by Ship's command to Shippers' representative. Any objections by the Master regarding the condition of the cargo are to be reported immediately to Shippers' representative prior loading in order to evaluate replacement of cargo damage.

All cargo already on board is to be considered as accepted cargo.

Owners to authorise Charterers' Surveyors at loading and discharging ports to perform inspection of cargo on board.

**Clause 34**

Master/owner to give first notice of arrival of the Vessel at loadport and present position when fixture is reconfirmed. thereafter, Master/Owner to give 7/5/3 days and 48/24 hours notice and exact position of the Vessel to Agents at loadport. to Agents at disharge port and to Bai Sea Chartering. e-mail: chartering@baisea.com

**Clause 35**

Shifting to Charterers' loading or discharging berth to be considered as part of the voyage and to be for Owners' account. Any shifting ordered by Port Authorities, shifting expenses and time to be for Owners' account.

**Clause 36**

In case of dead freight, the time allowed for loading and discharging to be calculated on the basis of tonnage for which freight is paid and not on the actual quantity loaded.

**Clause 37**

In the event of loss of time due to boycott of the Vessel by labour because of the Vessel's flag or nationality of the Owners, Master, Officers or crew, or the terms/conditions under which the Master, Officers or crew are employed, such time shall not count as laytime nor as time on demurrage.

**Clause 38**

Vessel not to dry-dock during the course of this Charter Party except in case of emergency.

**Clause 39**

Owners guarantee that the Vessel is not intended for sale and/or break-up upon completion of the engagement entered into under this Charter Party. Should the Owner contrary to the above guarantee sell the Vessel for break-up or not before she has been completely discharged and released by the Receivers of cargo, then the Owner to pay whatever insurance penalty might be assessed against the Charterers forthwith.

**Clause 40.- Vessel's description.**

MV 'DORIS T'
ABT 2050CC 141/139000G/B 1HO/HA STEELFL BOXLIKE
LOA 79,00M BEAM 12,40M DRAFT FULLY LADEN
ABT 5,00M ANTIGUA FLAG-GERMAN MANAGEMENT
BLT 1977 P+I GARD ARENDAL ISM/ITF OK
CLASSED HIGHEST B.V. GT 1973 / NT 853

Vessels' technical description given by Owners/Ship managers/Operators should be precise. exact and fully up to date before ship tenders NOR at loadport.

BAI SEA CHARTERING, S. L.
San Agustín, 2, 1° dcha.
28014 MADRID (SPAIN)
+34 91 360 19 30



ADDITIONAL CLAUSES TO THE CHARTER PARTY DATED MADRID,
THE 20th JUNE, 2008 BETWEEN

MESSRS. E

**Clause 41**

Charterers' Agents at both ends:

At loading port:        Messrs. NAVIERA BARCELONESA

At discharging port:    Messrs. NOURSHIP S.R.L.
                        Tel.: +213 14 098999 / +213 30835987
                        Fax: +213 38 861606
                        Mobile: +213 71144211

**Clause 42**

Time lost by reason of all or any of the following clauses shall not be computed in the loading or discharging time viz:
War, Rebellion, Tumult, Civil Commotions, Political Disturbances, Riots, Strikes, Stoppage of lightermen, tugboatmen or
other hands essential to the working, carriage, delivery, shipment or discharge of the said cargo whether partial or general
bad weather, intervention of customs and/or constituted Authorities or partial or total stoppage on railways, or any other
causes beyond the control of Charterers.

**Clause 43**

No other part cargo on board is acceptable.

**Clause 44**

The Vessel must have a valid certificate certifying that the Vessel is duly classified at the date of shipment by Lloyd's
Register of Shipping or equivalent. Owners guarantee to maintain Vessel P and I covered for the duration of this Charter
Party.

**Clause 45**

Charterers do not require lashing and securing, if requested by Master to be for Owners' account.

BALSEA CHARTERING, S. L.
San Agustín, 2, 1° dcha.
28014 MADRID (SPAIN)
+34 91 360 19 30

**Clause 46**

Owners guarantee that Vessels' hatches are watertight.

**Clause 47**

Bimco ISPS Clause to apply.

**THE OWNERS**                          **THE CHARTERERS**



# Exhibit B

# CONGEN BILL OF LADING

| | |
|---|---|
| **Shipper**<br>COMPAÑÍA ESPAÑOLA DE LAMINACION S.L.,<br>POLIGONO INDUSTRIAL SAN VICENTE S/N<br>CASTELLBISBAL 08755<br>BARCELONA SPAIN | **Reference**<br>Seven Seas Carriers AS<br>Postbox 1041 Sentrum<br>5808 Bergen Norway<br><br>B/L No. of ONE<br>EOLDBARHOU 2551 01 |

**Consignee**
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

**Notify address**
(A) JF MORAN COMPANY, INC. ATTN JOELLE INNOCENTI,
70 RATON DRIVE UNIT D, MILFORD, CT 06460,
USA TEL-203-877-5186, FAX- 203-877-8294,
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS
TRADING, FAX 214-689-5886, TEL 214-689-4314

| **Vessel**<br>M/V "SATURNUS" | **Port of loading**<br>BARCELONA, SPANISH PORT |
|---|---|

**Port of discharge**
HOUSTON, TX, USA

**Shipper's description of goods**                                          Gross weight

| | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS |
|---|---|---|
| PRIME NEWLY PRODUCED WIDE FLANGE BEAMS | | |
| TOTAL | 143 | 671,984 |

"DESCRIPTION OF ALL PRODUCTS SHIPPED AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: NOCLR-WHT-NOCLR"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 12"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which.................... on deck at Charterer's risk)

| | |
|---|---|
| Freight payable as per<br>CHARTER-PARTY dated ___21-10-2008___<br><br>FREIGHT ADVANCE.<br>Received on account of freight:_____<br><br>Time used for loading _____ days _____ hours | **SHIPPED** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above.<br><br>Weight measure, quality, quantity, condition, contents and value unknown.<br><br>IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.<br><br>FOR CONDITIONS OF CARRIAGE SEE OVERLEAF. |
| Freight payable at<br>FREIGHT PREPAID | Place and date of issue<br>BARCELONA; 06-11-2008 |
| Number of original Bs/L<br>THREE (3) | Signature<br>NAVIERA BARCELONESA, S.A. AS AUTHORIZED<br>VESSEL AGENT ON BEHALF OF THE MASTER / (MR.<br>ALEVOOR RADHAKRISHNA M/V SATURNUS) |

| Shipper | | |
|---|---|---|
| COMPAÑIA ESPAÑOLA DE LAMINACION S.L.,<br>POLIGONO INDUSTRIAL SAN VICENTE S/N<br>CASTELLBISBAL 08755<br>BARCELONA SPAIN | **Reference**<br>Seven Seas Carriers AS<br>Postbox 1041 Sentrum<br>5808 Bergen Norway | B/L No 2 TWO<br>EOLDBARHOU 2551 02 |

**Consignee**
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

**Notify address**
(A) JF MORAN COMPANY, INC. ATTN JOELLE INNOCENTI,
70 RATON DRIVE UNIT D, MILFORD, CT 06460,
USA TEL-203-877-5186, FAX- 203-877-8294,
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS
TRADING, FAX 214-689-5886,  TEL 214-689-4314

| Vessel | Port of loading |
|---|---|
| M/V "SATURNUS" | BARCELONA, SPANISH PORT |

**Port of discharge**
HOUSTON, TX, USA

**Shipper's description of goods**

PRIME NEWLY PRODUCED WIDE FLANGE BEAMS

| SIZE | LENGHT | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS |
|---|---|---|---|
| WFB 4" x 4" x 13# | 40 | 13 | 72,916 |
| WFB 6" x 4" x 12# | 40 | 11 | 58,489 |
| WFB 6" x 4" x 16# | 40 | 2 | 10,458 |
| WFB 6" x 6" x 20# | 40 | 4 | 21,717 |
| WFB 6" x 6" x 25# | 40 | 4 | 21,659 |
| WFB 8" x 4" x 10# | 40 | 9 | 35,185 |
| WFB 8" x 5-1/4" x 18# | 40 | 11 | 53,871 |
| WFB 8" x 6-1/2" x 24# | 40 | 12 | 63,171 |
| WFB 8" x 6-1/2" x 31# | 40 | 30 | 145,845 |
| WFB 8" x 8" x 40# | 40 | 8 | 34,516 |
| WFB 8" x 8" x 48# | 40 | 6 | 30,128 |
| WFB 8" x 8" x 67# | 40 | 3 | 14,743 |
| WFB 10" x 4" x 15# | 40 | 2 | 6,584 |
| WFB 10" x 5-3/4" x 22# | 40 | 10 | 56,391 |
| WFB 10" x 5-3/4" x 26# | 40 | 3 | 13,199 |
| WFB 10" x 5-3/4" x 30# | 40 | 9 | 50,115 |
| WFB 12" x 4" x 22# | 40 | 2 | 10,999 |
| WFB 12" x 6-1/2" x 26# | 40 | 1 | 4,398 |
| WFB 14" x 6-3/4" x 30# | 40 | 6 | 32,540 |
| WFB 16" x 7" x 36# | 40 | 2 | 6,599 |
| WFB 16" x 7" x 40# | 40 | 4 | 17,619 |
| WFB 16" x 7" x 50# | 40 | 1 | 4,398 |
| WFB 18" x 6" x 35# | 40 | 5 | 21,789 |
| WFB 18" x 6" x 40# | 40 | 2 | 10,420 |
| WFB 18" x 7-1/2" x 50# | 40 | 6 | 27,387 |
| WFB 18" x 7-1/2" x 60# | 40 | 3 | 16,149 |
| | | 169 | 841,285 |

"DETAILS OF PIECES PER BUNDLE AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: RED- WHT-RED"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 2"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which...................... on deck at Charterer's risk)

| Freight payable as per<br>CHARTER-PARTY dated _____ **21-10-2008** | S H I P P E D at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near there to as sha may safely get the goods specified above. |
|---|---|
| FREIGHT ADVANCE.<br>Received on account of freight:_____ | Weight measure, quality, quantity, condition, contents and value unknown.<br>IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the |
| Time used for loading _____ days _____ hours | others shall be void.<br>FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |
| | Freight payable at<br>FREIGHT PREPAID | Place and date of Issue<br>BARCELONA, 06-11-2008 |
| | Number of original Bs/L<br>THREE (3) | Signature<br>NAVIERA BARCELONESA, S.A. AS AUTHORIZED<br>VESSEL AGENT ON BEHALF OF THE MASTER / (MR.<br>ALEVOOR RADHAKRISHNA, M/V SATURNUS) |

②

# CONGEN BILL OF LADING

B/L No. 9/THREE

EOLDBARHOU 2551 03

**Shipper**
COMPAÑIA ESPAÑOLA DE LAMINACION S.L.,
POLIGONO INDUSTRIAL SAN VICENTE S/N
CASTELLBISBAL 08755
BARCELONA SPAIN

**Reference**
Seven Seas Carriers AS
Postbox 1041 Sentrum
5808 Bergen Norway

**Consignee**
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

**Notify address**
(A) JF MORAN COMPANY, INC. ATTN JOELLE INNOCENTI,
70 RATON DRIVE UNIT D, MILFORD, CT 06460,
USA TEL-203-877-5186, FAX- 203-877-8294,
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS
TRADING, FAX 214-689-5886, TEL 214-689-4314

| Vessel | Port of loading |
|---|---|
| M/V "SATURNUS" | BARCELONA, SPANISH PORT |

**Port of discharge**
HOUSTON, TX, USA

| Shipper's description of goods | | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS | Gross weight |
|---|---|---|---|---|

PRIME NEWLY PRODUCED WIDE FLANGE BEAMS

| - SIZE | LENGHT | | |
|---|---|---|---|
| WFB 4" x 4" x 13# | 40 | 13 | 72,882 |
| WFB 6" x 4" x 9# | 40 | 2 | 8,796 |
| WFB 6" x 4" x 16# | 40 | 2 | 8,792 |
| WFB 6" x 6" x 15# | 20 | 13 | 54,185 |
| WFB 6" x 6" x 15# | 40 | 9 | 49,433 |
| WFB 6" x 6" x 20# | 40 | 7 | 38,096 |
| WFB 6" x 6" x 25# | 40 | 5 | 27,101 |
| WFB 8" x 4" x 10# | 40 | 3 | 10,998 |
| WFB 8" x 4" x 13# | 40 | 2 | 10,014 |
| WFB 8" x 4" x 15# | 40 | 2 | 9,852 |
| WFB 8" x 5-1/4" x 18# | 40 | 4 | 19,614 |
| WFB 8" x 6-1/2" x 24# | 40 | 3 | 15,868 |
| WFB 8" x 6-1/2" x 28# | 40 | 3 | 11,784 |
| WFB 8" x 6-1/2" x 31# | 40 | 10 | 50,120 |
| WFB 8" x 8" x 40# | 40 | 3 | 12,988 |
| WFB 8" x 8" x 48# | 40 | 2 | 10,269 |
| WFB 10" x 4" x 12# | 40 | 2 | 6,013 |
| WFB 10" x 5-3/4" x 22# | 40 | 6 | 34,058 |
| WFB 10" x 5-3/4" x 26# | 40 | 1 | 4,800 |
| WFB 12" x 6-1/2" x 26# | 40 | 7 | 31,813 |
| WFB 14" x 6-3/4" x 30# | 40 | 1 | 3,810 |
| WFB 16" x 7" x 36# | 40 | 5 | 19,383 |
| WFB 18" x 6" x 35# | 40 | 1 | 4,329 |
| WFB 18" x 6" x 40# | 40 | 2 | 10,346 |
| WFB 18" x 7-1/2" x 50# | 40 | 4 | 20,053 |
| | TOTAL | 112 | 545,402 |

"DETAILS OF PIECES PER BUNDLE AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: YEL-WHT-YEL"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 3"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which...................... on deck at Charterer's risk)

| | |
|---|---|
| Freight payable as per CHARTER-PARTY dated ___21-10-2008___<br><br>FREIGHT ADVANCE.<br>Received on account of freight:_____<br><br>Time used for loading _____ days _____ hours | S H I P P E D at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near there to as she may safely get the goods specified above.<br><br>Weight measure, quality, quantity, condition, contents and value unknown.<br><br>IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.<br><br>FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at FREIGHT PREPAID | Place and date of issue BARCELONA, 06-11-2008 |
|---|---|
| Number of original Bs/L THREE (3) | Signature NAVIERA BARCELONESA, S.A. AS AUTHORIZED VESSEL AGENT ON BEHALF OF THE MASTER / (MR. ALEVOOR RADHAKRISHNA, M.V. SATURNUS) |

(3)

B/L No. 4/FOUR

EGLDBARHOU 2551 04

**Shipper**
COMPAÑÍA ESPAÑOLA DE LAMINACION S.L.,
POLIGONO INDUSTRIAL SAN VICENTE S/N
CASTELLBISBAL 08755
BARCELONA SPAIN

**Reference**
Seven Seas Carriers AS
Postbox 1041 Sentrum
5808 Bergen Norway

**Consignee**
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

**Notify address**
(A) JF MORAN COMPANY, INC. ATTN JOELLE INNOCENTI,
70 RATON DRIVE UNIT D, MILFORD, CT 06460,
USA TEL-203-877-5186, FAX- 203-877-8294,
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS
TRADING, FAX 214-689-5886,  TEL 214-689-4314

| Vessel | Port of loading |
|---|---|
| M/V "SATURNUS" | BARCELONA, SPANISH PORT |

**Port of discharge**
HOUSTON, TX, USA

**Shipper's description of goods**

Gross weight

PRIME NEWLY PRODUCED WIDE FLANGE BEAMS

| SIZE | LENGHT | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS |
|---|---|---|---|
| WFB 8" x 4" x 10# | 40 | 5 | 19,515 |
| WFB 8" x 4" x 13# | 45 | 2 | 9,640 |
| WFB 8" x 4" x 13# | 50 | 2 | 10,600 |
| WFB 8" x 4" x 15# | 50 | 2 | 10,164 |
| WFB 10" x 4" x 12# | 40 | 2 | 4,802 |
| WFB 10" x 4" x 12# | 50 | 2 | 5,769 |
| WFB 10" x 4" x 15# | 50 | 2 | 9,388 |
| WFB 12" x 4" x 14# | 40 | 3 | 10,949 |
| WFB 12" x 4" x 14# | 50 | 1 | 4,551 |
| | TOTAL | 21 | 85,378 |

"DETAILS OF PIECES PER BUNDLE AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: GRN-WHT-GRN"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 4"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which...................... on deck at Charterer's risk)

| | |
|---|---|
| Freight payable as per CHARTER-PARTY dated _____21-10-2008_____ | SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above. |
| FREIGHT ADVANCE. Received on account of freight:_____ | Weight measure, quality, quantity, condition, contents and value unknown. |
| Time used for loading _____ days _____ hours | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF.

| Freight payable at FREIGHT PREPAID | Place and date of issue BARCELONA, 06-11-2008 |
|---|---|
| Number of original Bs/L THREE (3) | Signature NAVIERA BARCELONESA, S.A. AS AUTHORIZED VESSEL AGENT ON BEHALF OF THE MASTER / (MR. ALEVOOR RADHAKRISHNA, MV SATURNUS) |



**Shipper**
COMPAÑÍA ESPAÑOLA DE LAMINACION S.L.,
POLIGONO INDUSTRIAL SAN VICENTE S/N
CASTELLBISBAL 08755
BARCELONA SPAIN

**Reference**
Seven Seas Carriers AS
Postbox 1041 Sentrum
5808 Bergen Norway

EOLDBARHOU 2551 05

**Consignee**
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

**Notify address**
(A) JF MORAN COMPANY, INC. ATTN JOELLE INNOCENTI,
70 RATON DRIVE UNIT D, MILFORD, CT 06460,
USA TEL-203-877-5186, FAX- 203-877-8294,
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS
TRADING, FAX 214-689-5886, TEL 214-689-4314

**Vessel**
M/V "SATURNUS"

**Port of loading**
BARCELONA, SPANISH PORT

**Port of discharge**
HOUSTON, TX, USA

Gross weight

**Shipper's description of goods**

PRIME NEWLY PRODUCED WIDE FLANGE BEAMS

| SIZE | LENGHT | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS |
|---|---|---|---|
| WFB 10" x 5-3/4" x 33# | 20 | 7 | 18,768 |
| WFB 10" x 5-3/4" x 33# | 40 | 7 | 33,643 |
| WFB 10" x 5-3/4" x 33# | 60 | 2 | 10,852 |
| WFB 10" x 10" x 49# | 40 | 2 | 10,691 |
| WFB 10" x 10" x 49# | 50 | 2 | 8,894 |
| WFB 12" x 8" x 40# | 20 | 5 | 15,633 |
| WFB 12" x 8" x 40# | 40 | 9 | 37,719 |
| WFB 12" x 8" x 40# | 50 | 2 | 10,962 |
| WFB 12" x 8" x 40# | 60 | 5 | 21,655 |
| WFB 12" x 8" x 45# | 40 | 2 | 6,498 |
| WFB 12" x 8" x 45# | 50 | 1 | 4,091 |
| WFB 12" x 8" x 45# | 60 | 1 | 4,921 |
| WFB 12" x 10" x 53# | 40 | 6 | 22,997 |
| WFB 12" x 10" x 53# | 50 | 2 | 9,715 |
| WFB 12" x 10" x 53# | 60 | 1 | 4,403 |
| WFB 12" x 10" x 58# | 50 | 1 | 5,254 |
| WFB 12" x 10" x 58# | 60 | 2 | 9,410 |
| WFB 14" x 8" x 43# | 40 | 1 | 4,625 |
| WFB 14" x 8" x 43# | 60 | 5 | 19,783 |
| WFB 14" x 10" x 61# | 40 | 2 | 8,877 |
| WFB 14" x 10" x 61# | 50 | 1 | 5,496 |
| WFB 14" x 10" x 74# | 40 | 4 | 21,366 |
| WFB 14" x 10" x 74# | 50 | 2 | 10,105 |
| WFB 14" x 10" x 74# | 60 | 3 | 10,987 |
| WFB 16" x 10-1/4" x 67# | 40 | 2 | 7,299 |
| WFB 16" x 10-1/4" x 67# | 60 | 3 | 10,860 |
| | TOTAL | 80 | 335,504 |

"DETAILS OF PIECES PER BUNDLE AS PER ATTACHED LIST"

"FREIGHT PREPAID"

"FO"

"COLOR CODING: BLK-WHT-BLK"

"PURCHASE ORDER NUMBER: 61937"

"LOT NUMBER: 10"

"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which...................... on deck at Charterer's risk)

| | |
|---|---|
| Freight payable as per CHARTER-PARTY dated _____ **21-10-2008** | **SHIPPED** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near there to as she may safely get the goods specified above. |
| FREIGHT ADVANCE. Received on account of freight:_____ | Weight measure, quality, quantity, condition, contents and value unknown. |
| Time used for loading _____ days _____ hours | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| | |
|---|---|
| Freight payable at **FREIGHT PREPAID** | Place and date of issue BARCELONA, 06-11-2008 |
| Number of original Bs/L **THREE (3)** | Signature NAVIERA BARCELONESA, S.A. AS AUTHORIZED VESSEL AGENT ON BEHALF OF THE MASTER / (MR. ALEVOOR RADHAKRISHNA, MV SATURNUS) |



# CONGEN BILL OF LADING

B/L No. 6/SIX
EOLDBARHOU 2551 07

**Shipper**
COMPAÑÍA ESPAÑOLA DE LAMINACION S.L.,
POLIGONO INDUSTRIAL SAN VICENTE S/N
CASTELLBISBAL 08755
BARCELONA SPAIN

**Reference**
Seven Seas Carriers AS
Postbox 1041 Sentrum
5808 Bergen Norway

**Consignee**
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

**Notify address**
(A) JF MORAN COMPANY, INC. ATTN JOELLE INNOCENTI,
70 RATON DRIVE UNIT D, MILFORD, CT 06460,
USA TEL-203-877-5186, FAX- 203-877-8294,
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS
TRADING, FAX 214-689-5886,  TEL 214-689-4314

| Vessel | Port of loading |
|---|---|
| M/V "SATURNUS" | BARCELONA, SPANISH PORT |

**Port of discharge**
HOUSTON, TX, USA

**Shipper's description of goods**                                                   **Gross weight**

| | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS |
|---|---|---|
| PRIME NEWLY PRODUCED WIDE FLANGE BEAMS | | |
| TOTAL | 1251 | 5697,700 |

"DESCRIPTION OF ALL PRODUCTS SHIPPED AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: WHT-WHT-WHT"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 1"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which...................... on deck at Charterer's risk)

| | |
|---|---|
| Freight payable as per CHARTER-PARTY dated _____ 21-10-2008 | **S H I P P E D** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near there to as she may safely get the goods specified above. |
| FREIGHT ADVANCE. Received on account of freight:_____ | Weight measure, quality, quantity, condition, contents and value unknown. |
| Time used for loading _____ days _____ hours | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
| | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at | Place and date of issue |
|---|---|
| FREIGHT PREPAID | BARCELONA, 06-11-2008 |
| Number of original Bs/L | Signature |
| THREE (3) | NAVIERA BARCELONESA, S.A. AS AUTHORIZED VESSEL AGENT ON BEHALF OF THE MASTER / (MR. ALEVOOR RADHAKRISHÑA, MV SATURNUS) |

CONGEN BILL OF LADING

B/L No. 1/ONE

Shipper

COMPAÑÍA ESPAÑOLA DE LAMINACION S.L.,
POLIGONO INDUSTRIAL SAN VICENTE S/N
CASTELLBISBAL 08755
BARCELONA SPAIN

Reference
Seven Seas Carriers AS
Postbox 1041 Sentrum
5808 Bergen Norway

Consignee

TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

Notify address

(A) CMC COMMERCIAL METALS DE MEXICO S DE R L DE CV,
FAX 52-55-5020-3241, TEL 52-55-5020-3245
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS TRADING,
FAX 214-689-5886, TEL 214-689-4314

| Vessel | Port of loading |
|---|---|
| M/V "SATURNUS" | BARCELONA, SPANISH PORT |

Port of discharge
ALTA MIRA, MEXICO

Gross weight

Shipper's description of goods

PRIME NEWLY PRODUCED WIDE FLANGE BEAMS

| SIZE | LENGHT | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS |
|---|---|---|---|
| WFB 10" x 4" x 12# | 40 | 39 | 118,103 |
| WFB 12" x 4" x 14# | 40 | 17 | 61,728 |
| WFB 14" x 5" x 22# | 40 | 10 | 55,810 |
| WFB 14" x 10" x 61# | 40 | 14 | 59,441 |
| WFB 14" x 10" x 74# | 40 | 10 | 53,254 |
| WFB 14" x 10" x 82# | 40 | 12 | 53,442 |
| WFB 16" x 5-1/2" x 26# | 40 | 1 | 0,923 |
| WFB 16" x 5-1/2" x 31# | 40 | 15 | 59,108 |
| | TOTAL | 118 | 461,819 |

"DETAILS OF PIECES PER BUNDLES AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: WHT-RED-WHT"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 14"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which...................... on deck at Charterer's risk)

Freight payable as per
CHARTER-PARTY dated _____ 21-10-2008

FREIGHT ADVANCE.
Received on account of freight:

Time used for loading _____ days _____ hours

SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near there to as she may safely get the goods specified above.

Weight measure, quality, quantity, condition, contents and value unknown.

IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at FREIGHT PREPAID | Place and date of issue BARCELONA, 06-11-2008 |
|---|---|
| Number of original Bs/L THREE (3) | Signature NAVIERA BARCELONESA, S.A. AS AUTHORIZED VESSEL AGENT ON BEHALF OF THE MASTER / (MR. ALEVOOR RADHAKRISHNA, MV SATURNUS) |



**Shipper**
COMPAÑÍA ESPAÑOLA DE LAMINACION S.L.,
POLIGONO INDUSTRIAL  SAN VICENTE  S/N
CASTELLBISBAL  08755
BARCELONA SPAIN

Reference
Seven Seas Carriers AS
Postbox 1041 Sentrum
5808 Bergen Norway

**Consignee**
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

**Notify address**
(A) CMC COMMERCIAL METALS DE MEXICO S DE R L DE CV,
FAX 52-55-5020-3241, TEL 52-55-5020-3245
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS TRADING,
FAX 214-689-5886, TEL 214-689-4314

| Vessel | Port of loading |
|---|---|
| M/V "SATURNUS" | BARCELONA, SPANISH PORT |

Port of discharge
ALTA MIRA, MEXICO

Shipper's description of goods

Gross weight

PRIME NEWLY PRODUCED WIDE FLANGE BEAMS

| SIZE | LENGTH | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS |
|---|---|---|---|
| WFB 6" x 4" x 9# | 40 | 13 | 59,879 |
| WFB 6" x 4" x 12# | 40 | 9 | 47,647 |
| WFB 6" x 4" x 16# | 40 | 10 | 52,347 |
| WFB 8" x 4" x 13# | 40 | 6 | 29,634 |
| WFB 8" x 4" x 15# | 40 | 6 | 29,506 |
| WFB 8" x 5-1/4" x 21# | 40 | 19 | 87,610 |
| WFB 10" x 4" x 12# | 40 | 10 | 30,421 |
| WFB 10" x 4" x 19# | 40 | 10 | 46,261 |
| WFB 10" x 5-3/4" x 22# | 40 | 14 | 79,910 |
| WFB 10" x 10" x 49# | 40 | 5 | 26,850 |
| WFB 10" x 10" x 54# | 40 | 6 | 23,370 |
| WFB 10" x 10" x 60# | 40 | 6 | 25,207 |
| WFB 12" x 4" x 14# | 40 | 8 | 28,944 |
| WFB 12" x 4" x 19# | 40 | 6 | 29,111 |
| WFB 12" x 4" x 22# | 40 | 6 | 30,407 |
| WFB 12" x 6-1/2" x 26# | 40 | 31 | 148,018 |
| WFB 12" x 6-1/2" x 30# | 40 | 9 | 49,176 |
| WFB 12" x 8" x 40# | 40 | 3 | 13,209 |
| WFB 14" x 8" x 43# | 40 | 10 | 46,540 |
| WFB 16" x 7" x 36# | 40 | 13 | 51,093 |
| WFB 16" x 7" x 40# | 40 | 12 | 50,837 |
| WFB 16" x 7" x 45# | 40 | 6 | 29,320 |
| WFB 16" x 7" x 50# | 40 | 14 | 77,901 |
| WFB 18" x 7-1/2"  x 65# | 40 | 11 | 52,152 |
| WFB 18" x 7-1/2"  x 71# | 40 | 10 | 50,740 |
| | TOTAL | 253 | 1196,067 |

"DETAILS OF PIECES PER BUNDLES AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: YEL-RED-YEL"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 16"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which....................... on deck at Charterer's risk)

| | |
|---|---|
| Freight payable as per CHARTER-PARTY dated ____21-10-2008____ <br><br> FREIGHT ADVANCE. Received on account of freight: <br><br> Time used for loading _____ days _____ hours | **S H I P P E D** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near there to as she may safely get the goods specified above. <br><br> Weight measure, quality, quantity, condition, contents and value unknown. <br><br> IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. <br><br> FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |
| Freight payable at <br> FREIGHT PREPAID | Place and date of issue <br> BARCELONA, 06-11-2008 |
| Number of original Bs/L <br> **THREE (3)** | Signature <br> NAVIERA BARCELONESA, S.A. AS AUTHORIZED VESSEL AGENT ON BEHALF OF THE MASTER / (MR. ALEVOOR RADHAKRISHNA, MV SATURNUS) |



B/L No. 3/THREE

**Shipper**
COMPAÑIA ESPAÑOLA DE LAMINACION S.L.,
POLIGONO INDUSTRIAL SAN VICENTE S/N
CASTELLBISBAL 08755
BARCELONA SPAIN

Reference
Seven Seas Carriers AS
Postbox 1041 Sentrum
5808 Bergen Norway

**Consignee**
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

**Notify address**
(A) CMC COMMERCIAL METALS DE MEXICO S DE R L DE CV,
FAX 52-55-5020-3241, TEL 52-55-5020-3245
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS TRADING,
FAX 214-689-5886, TEL 214-689-4314

| Vessel | Port of loading |
|---|---|
| M/V "SATURNUS" | BARCELONA, SPANISH PORT |

**Port of discharge**
ALTA MIRA, MEXICO

Gross weight

Shipper's description of goods

PRIME NEWLY PRODUCED WIDE FLANGE BEAMS

| SIZE | LENGHT | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS |
|---|---|---|---|
| WFB 6" x 4" x 9# | 40 | 6 | 27.917 |
| WFB 6" x 4" x 12# | 40 | 6 | 32.085 |
| WFB 6" x 4" x 16# | 40 | 4 | 20.888 |
| WFB 8" x 4" x 15# | 40 | 4 | 19.693 |
| WFB 8" x 5-1/4" x 18# | 40 | 7 | 32.145 |
| WFB 8" x 5-1/4" x 21# | 40 | 3 | 12.539 |
| WFB 8" x 6-1/2" x 31# | 40 | 4 | 20.050 |
| WFB 10" x 5-3/4" x 22# | 40 | 4 | 21.949 |
| WFB 10" x 5-3/4" x 26# | 40 | 6 | 28.663 |
| WFB 10" x 5-3/4" x 30# | 40 | 5 | 27.748 |
| WFB 12" x 6-1/2" x 26# | 40 | 6 | 28.323 |
| WFB 12" x 6-1/2" x 30# | 40 | 6 | 32.694 |
| WFB 14" x 6-3/4" x 38# | 40 | 4 | 21.997 |
| WFB 14" x 8" x 53# | 40 | 4 | 15.046 |
| WFB 16" x 5-1/2" x 31# | 40 | 4 | 15.630 |
| WFB 16" x 7" x 36# | 40 | 8 | 31.167 |
| WFB 16" x 7" x 40# | 40 | 5 | 21.588 |
| WFB 16" x 7" x 45# | 40 | 6 | 29.321 |
| WFB 16" x 7" x 50# | 40 | 4 | 21.954 |
| TOTAL | 40 | 96 | 461.467 |

"DETAILS OF PIECES PER BUNDLES AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: GRN-RED-GRN"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 17"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which........................ on deck at Charterer's risk)

| Freight payable as per CHARTER-PARTY dated    21-10-2008 | S H I P P E D at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above. |
|---|---|
| FREIGHT ADVANCE. Received on account of freight: | Weight measure, quality, quantity, condition, contents and value unknown. |
| | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
| Time used for loading _____ days _____ hours | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at FREIGHT PREPAID | Place and date of issue BARCELONA, 06-11-2008 |
|---|---|
| Number of original Bs/L THREE (3) | Signature NAVIERA BARCELONESA, S.A. AS AUTHORIZED VESSEL AGENT ON BEHALF OF THE MASTER (MR. ALEVOOR RADHAKRISHNA, MV SATURNUS) |



Shipper

COMPAÑIA ESPAÑOLA DE LAMINACION S.L.,
POLIGONO INDUSTRIAL SAN VICENTE S/N
CASTELLBISBAL 08755
BARCELONA SPAIN

**Reference**

Seven Seas Carriers AS
Postbox 1041 Sentrum
5808 Bergen Norway

Consignee

TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

Notify address

(A) CMC COMMERCIAL METALS DE MEXICO S DE R L DE CV,
FAX 52-55-5020-3241, TEL 52-55-5020-3245
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS TRADING,
FAX 214-689-5886, TEL 214-689-4314

| Vessel | Port of loading |
|---|---|
| M/V "SATURNUS" | BARCELONA, SPANISH PORT |

Port of discharge
ALTA MIRA, MEXICO

Shipper's description of goods

Gross weight

PRIME NEWLY PRODUCED WIDE FLANGE BEAMS

| SIZE | LENGHT | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS |
|---|---|---|---|
| WFB 6" x 4" x 9# | 40 | 4 | 18,060 |
| WFB 6" x 4" x 12# | 40 | 2 | 10,348 |
| WFB 6" x 4" x 16# | 40 | 6 | 31,457 |
| WFB 8" x 4" x 10# | 40 | 10 | 39,302 |
| WFB 8" x 4" x 13# | 40 | 6 | 29,522 |
| WFB 8" x 4" x 15# | 40 | 4 | 19,681 |
| WFB 8" x 5-1/4" x 18# | 40 | 10 | 48,910 |
| WFB 8" x 5-1/4" x 21# | 40 | 4 | 14,864 |
| WFB 10" x 4" x 12# | 40 | 11 | 33,457 |
| WFB 10" x 4" x 15# | 40 | 7 | 26,351 |
| WFB 10" x 4" x 17# | 40 | 6 | 25,863 |
| WFB 10" x 4" x 19# | 40 | 5 | 24,055 |
| WFB 10" x 5-3/4" x 22# | 40 | 11 | 62,005 |
| WFB 10" x 5-3/4" x 26# | 40 | 11 | 52,397 |
| WFB 10" x 5-3/4" x 30# | 40 | 6 | 37,719 |
| WFB 12" x 4" x 14# | 40 | 4 | 14,447 |
| WFB 12" x 4" x 16# | 40 | 4 | 14,495 |
| WFB 12" x 4" x 19# | 40 | 6 | 26,886 |
| WFB 12" x 4" x 22# | 40 | 2 | 11,224 |
| WFB 12" x 6-1/2" x 26# | 40 | 12 | 57,237 |
| WFB 12" x 6-1/2" x 30# | 40 | 7 | 37,856 |
| WFB 12" x 6-1/2" x 35# | 40 | 6 | 30,697 |
| WFB 14" x 6-3/4" x 30# | 40 | 9 | 49,054 |
| WFB 14" x 6-3/4" x 34# | 40 | 11 | 53,495 |
| WFB 14" x 6-3/4" x 38# | 40 | 4 | 22,079 |
| WFB 16" x 7" x 36# | 40 | 11 | 43,139 |
| WFB 16" x 7" x 40# | 40 | 8 | 34,477 |
| WFB 16" x 7" x 50# | 40 | 4 | 19,442 |
| WFB 18" x 7-1/2" x 50# | 40 | 7 | 31,828 |
| WFB 18" x 7-1/2" x 55# | 40 | 8 | 36,802 |
| WFB 18" x 7-1/2" x 60# | 40 | 7 | 37,451 |
| WFB 18" x 7-1/2" x 65# | 40 | 7 | 32,906 |
| WFB 18" x 7-1/2" x 71# | 40 | 5 | 25,240 |
| Totals | | 225 | 1,052,746 |

"DETAILS OF PIECES PER BUNDLES AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: BLU-RED-BLU"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 18"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which...................... on deck at Charterer's risk)

| Freight payable as per CHARTER-PARTY dated 21-10-2008 | **SHIPPED** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above. |
|---|---|
| FREIGHT ADVANCE. Received on account of freight:_____ | Weight measure, quality, quantity, condition, contents and value unknown. |
| Time used for loading _____ days _____ hours | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
| | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at | Place and date of issue |
|---|---|
| FREIGHT PREPAID | BARCELONA, 06-11-2008 |
| Number of original Bs/L | Signature |
| THREE (3) | NAVIERA BARCELONESA, S.A. AS AUTHORIZED VESSEL AGENT ON BEHALF OF THE MASTER / (MR. ALEVOOR RADHAKRISHNA, MV SATURNUS) |



CONGEN BILL OF LADING

| | | B/L No. 1/ONE |
|---|---|---|

**Shipper**
COMPAÑIA ESPAÑOLA DE LAMINACION S.L.,
POLIGONO INDUSTRIAL SAN VICENTE S/N
CASTELLBISBAL 08755
BARCELONA SPAIN

**Reference**
Seven Seas Carriers AS
Postbox 1041 Sentrum
5808 Bergen Norway

EOLDBARMOB 2551 01

**Consignee**
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

**Notify address**
(A) JF MORAN COMPANY, INC. ATTN JOELLE INNOCENTI,
70 RATON DRIVE UNIT D, MILFORD, CT 06460,
USA TEL-203-877-5186, FAX- 203-877-8294,
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS
TRADING, FAX 214-689-5886, TEL 214-689-4314

| Vessel | Port of loading |
|---|---|
| M/V "SATURNUS" | BARCELONA, SPANISH PORT |

**Port of discharge**
MOBILE, AL, USA

Shipper's description of goods | Gross weight

PRIME NEWLY PRODUCED WIDE FLANGE BEAMS

| SIZE | LENGHT | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS |
|---|---|---|---|
| WFB 4" x 4" x 13# | 40 | 3 | 16,665 |
| WFB 6" x 6" x 15# | 40 | 4 | 21,967 |
| WFB 8" x 4" x 13# | 40 | 2 | 9,836 |
| WFB 8" x 5-1/4" x 18# | 40 | 3 | 14,779 |
| WFB 8" x 6-1/2" x 24# | 40 | 4 | 21,321 |
| WFB 8" x 6-1/2" x 31# | 40 | 4 | 20,216 |
| WFB 8" x 8" x 35# | 40 | 1 | 5,028 |
| | TOTAL | 21 | 109,812 |

"DETAILS OF PIECES PER BUNDLES AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: GRN-YEL-GRN"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 9"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which.................... on deck at Charterer's risk)

| | |
|---|---|
| Freight payable as per CHARTER-PARTY dated ____21-10-2008____ | **SHIPPED** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near there to as she may safely get the goods specified above. |
| FREIGHT ADVANCE. Received on account of freight: _____ | Weight measure, quality, quantity, condition, contents and value unknown. IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
| Time used for loading _____ days _____ hours | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at | Place and date of issue |
|---|---|
| FREIGHT PREPAID | BARCELONA, 06-11-2008 |
| Number of original Bs/L | Signature |
| THREE (3) | NAVIERA BARCELONESA, S.A. AS AUTHORIZED VESSEL AGENT ON BEHALF OF THE MASTER / (MR. ALEXGOR RADHAKRISHNA, MV SATURNUS) |

B/L No. 2/TWO
EOLDBARMOB 2551 02

**Shipper**
COMPAÑÍA ESPAÑOLA DE LAMINACION S.L.,
POLIGONO INDUSTRIAL SAN VICENTE S/N
CASTELLBISBAL 08755
BARCELONA SPAIN

**Reference**
Seven Seas Carriers AS
Postbox 1041 Sentrum
5808 Bergen Norway

**Consignee**
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

**Notify address**
(A) JF MORAN COMPANY, INC. ATTN JOELLE INNOCENTI,
70 RATON DRIVE UNIT D, MILFORD, CT 06460,
USA TEL-203-877-5186, FAX- 203-877-8294,
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS
TRADING, FAX 214-689-5886, TEL 214-689-4314

| Vessel | Port of loading |
|--------|-----------------|
| M/V "SATURNUS" | BARCELONA, SPANISH PORT |

**Port of discharge**
MOBILE, AL, USA

Gross weight

**Shipper's description of goods**

| | | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS |
|--|--|--|--|
| PRIME NEWLY PRODUCED WIDE FLANGE BEAMS | | | |
| SIZE | LENGHT | | |
| WFB 4" x 4" x 13# | 20 | 2 | 10,998 |
| WFB 8" x 4" x 13# | 40 | 1 | 4,927 |
| WFB 16" x 7" x 50# | 50 | 2 | 9,046 |
| WFB 18" x 6" x 35# | 40 | 5 | 21,957 |
| WFB 18" x 6" x 35# | 45 | 2 | 9,854 |
| | TOTAL | 12 | 56,782 |

"DETAILS OF PIECES PER BUNDLES AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: WHT-YEL-WHT"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 6"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which........................ on deck at Charterer's risk)

| Freight payable as per CHARTER-PARTY dated ____21-10-2008____ | S H I P P E D at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near there to as she may safely get the goods specified above. |
|--|--|
| FREIGHT ADVANCE. Received on account of freight:_____ | Weight measure, quality, quantity, condition, contents and value unknown. |
| Time used for loading _____ days _____ hours | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
| | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at FREIGHT PREPAID | Place and date of issue BARCELONA, 06-11-2008 |
|--|--|
| Number of original Bs/L THREE (3) | Signature NAVIERA BARCELONESA, S.A. AS AUTHORIZED VESSEL AGENT ON BEHALF OF THE MASTER / (MR. ALEVOOR RADHAKRISHNA, MV SATURNUS) |



CONGEN BILL OF LADING

**Shipper**
COMPAÑÍA ESPAÑOLA DE LAMINACION S.L.,
POLIGONO INDUSTRIAL SAN VICENTE S/N
CASTELLBISBAL 08755
BARCELONA SPAIN

B/L No. 3/THREE
EOLDBARMOB 2551 03

**Reference**
Seven Seas Carriers AS
Postbox 1041 Sentrum
5808 Bergen Norway

**Consignee**
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

**Notify address**
(A) JF MORAN COMPANY, INC. ATTN JOELLE INNOCENTI,
70 RATON DRIVE UNIT D, MILFORD, CT 06460,
USA TEL-203-877-5186, FAX- 203-877-8294,
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS
TRADING, FAX 214-689-5886, TEL 214-689-4314

**Vessel** M/V "SATURNUS"    **Port of loading** BARCELONA, SPANISH PORT

**Port of discharge** MOBILE, AL, USA

**Shipper's description of goods**                                          Gross weight

PRIME NEWLY PRODUCED WIDE FLANGE BEAMS

| SIZE | LENGHT | NUMBER OF BUNDLES | QUANTITY GROSS AND NET WEIGHT IN METRIC TONS |
|---|---|---|---|
| WFB 10" x 10" x 49# | 35 | 4 | 18,582 |
| WFB 10" x 10" x 49# | 40 | 3 | 16,191 |
| WFB 10" x 10" x 49# | 45 | 5 | 18,978 |
| WFB 10" x 10" x 49# | 50 | 4 | 17,860 |
| WFB 10" x 10" x 49# | 55 | 2 | 9,940 |
| WFB 16" x 10-1/4" x 67# | 40 | 4 | 14,740 |
| WFB 16" x 10-1/4" x 67# | 50 | 2 | 9,187 |
| WFB 16" x 10-1/4" x 67# | 55 | 4 | 13,373 |
| WFB 16" x 10-1/4" x 67# | 60 | 1 | 3,617 |
| WFB 16" x 10-1/4" x 77# | 50 | 2 | 10,293 |
| WFB 16" x 10-1/4" x 77# | 55 | 3 | 11,258 |
| WFB 16" x 10-1/4" x 77# | 60 | 2 | 8,301 |
| WFB 16" x 10-1/4" x 89# | 50 | 2 | 8,016 |
| WFB 16" x 10-1/4" x 89# | 55 | 3 | 10,911 |
| WFB 16" x 10-1/4" x 89# | 60 | 2 | 9,643 |
| WFB 16" x 10-1/4" x 100# | 50 | 2 | 6,759 |
| WFB 16" x 10-1/4" x 100# | 55 | 2 | 9,881 |
| TOTAL | | 47 | 197,530 |

"DETAILS OF PIECES PER BUNDLES AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: BLU-YEL-BLU"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 11"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which...................... on dock at Charterer's risk)

Freight payable as per CHARTER-PARTY dated _____ 21-10-2008 _____

FREIGHT ADVANCE.
Received on account of freight:_____

Time used for loading _____ days _____ hours

SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near there to as she may safely get the goods specified above.

Weight measure, quality, quantity, condition, contents and value unknown.

IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

Freight payable at FREIGHT PREPAID

Place and date of issue BARCELONA, 06-11-2008

Number of original Bs/L THREE (3)

Signature
NAVIERA BARCELONESA S.A. AS AUTHORIZED VESSEL AGENT ON BEHALF OF THE MASTER / (MR. ALEVOOR RADHAKRISHNA, MV SATURNUS)

| Shipper | | |
|---|---|---|
| COMPAÑIA ESPAÑOLA DE LAMINACION S.L.,<br>POLIGONO INDUSTRIAL SAN VICENTE S/N<br>CASTELLBISBAL 08755<br>BARCELONA SPAIN | B/L No. 4/FOUR<br>EOLDBARMOB 2551 04 | |

**Reference**
Seven Seas Carriers AS
Postbox 1041 Sentrum
5808 Bergen Norway

Consignee
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

Notify address
(A) JF MORAN COMPANY, INC. ATTN JOELLE INNOCENTI,
70 RATON DRIVE UNIT D, MILFORD, CT 06460,
USA TEL-203-877-5186, FAX- 203-877-8294,
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS
TRADING, FAX 214-689-5886, TEL 214-689-4314

| Vessel<br>M/V "SATURNUS" | Port of loading<br>BARCELONA, SPANISH PORT |
|---|---|

Port of discharge
MOBILE, AL, USA

| Shipper's description of goods | | Gross weight |
|---|---|---|

| | NUMBER OF<br>BUNDLES | QUANTITY<br>GROSS AND NET<br>WEIGHT IN METRIC TONS |
|---|---|---|
| PRIME NEWLY PRODUCED WIDE FLANGE BEAMS | | |
| TOTAL | 321 | 1.464,444 |

"DESCRIPTION OF ALL PRODUCTS SHIPPED AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: YEL-YEL-YEL"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 8"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which........................ on deck at Charterer's risk)

| Freight payable as per<br>CHARTER-PARTY dated _____ 21-10-2008 | S H I P P E D at the Port of Loading in apparent good order and condition on board the<br>Vessel for carriage to the Port of Discharge or so near there to as she may safely get the<br>goods specified above. |
|---|---|
| FREIGHT ADVANCE.<br>Received on account of freight:_____ | Weight measure, quality, quantity, condition, contents and value unknown. |
| Time used for loading _____ days _____ hours | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of<br>Lading indicated below all of this tenor and date, any one of which being accomplished the<br>others shall be void. |
| | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at<br>FREIGHT PREPAID | Place and date of Issue.<br>BARCELONA, 06-11-2008 |
|---|---|
| Number of original Bs/L<br>THREE (3) | Signature<br>NAVIERA BARCELONESA, S.A. AS AUTHORIZED<br>VESSEL AGENT ON BEHALF OF THE MASTER / (MR.<br>ALEVOOR RADHAKRISHNA, MV SATURNUS) |

14

## CONGEN BILL OF LADING

| | |
|---|---|
| **Shipper**<br>COMPAÑIA ESPAÑOLA DE LAMINACION S.L.,<br>POLIGONO INDUSTRIAL SAN VICENTE S/N<br>CASTELLBISBAL 08755<br>BARCELONA SPAIN | **B/L No. 1/ONE**<br>**Reference**  EOLDBARNOR 2551 01<br>Seven Seas Carriers AS<br>Postbox 1041 Sentrum<br>5808 Bergen Norway |

**Consignee**
TO THE ORDER OF COMMERCIAL METALS COMPANY
DBA CMC DALLAS TRADING,
6565 N. MACARTHUR BLVD., SUITE 800,
IRVING, TX. 75039 USA

**Notify address**
(A) JF MORAN COMPANY, INC. ATTN JOELLE INNOCENTI,
70 RATON DRIVE UNIT D, MILFORD, CT 06460,
USA TEL-203-877-5186, FAX- 203-877-8294,
(B) COMMERCIAL METALS COMPANY DBA CMC DALLAS
TRADING, FAX 214-689-5886, TEL 214-689-4314

| **Vessel** | **Port of loading** |
|---|---|
| M/V "SATURNUS" | BARCELONA, SPANISH PORT |

**Port of discharge**
NORFOLK, VA, USA

**Shipper's description of goods**                                                                    **Gross weight**

| | NUMBER OF<br>BUNDLES | QUANTITY<br>GROSS AND NET<br>WEIGHT IN METRIC TONS |
|---|---|---|
| PRIME NEWLY PRODUCED WIDE FLANGE BEAMS | | |
| TOTAL | 406 | 1896,028 |

"DESCRIPTION OF ALL PRODUCTS SHIPPED AS PER ATTACHED LIST"

"FREIGHT PREPAID"
"FO"
"COLOR CODING: NO COLOR"
"PURCHASE ORDER NUMBER: 61937"
"LOT NUMBER: 13"
"LETTER OF CREDIT NUMBER: TGTI-571827"

(of which...................... on deck at Charterer's risk)

| | |
|---|---|
| Freight payable as per<br>CHARTER-PARTY dated _____ 21-10-2008<br><br>FREIGHT ADVANCE.<br>Received on account of freight:_____<br><br>Time used for loading _____ days _____ hours | S H I P P E D at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above.<br><br>Weight measure, quality, quantity, condition, contents and value unknown.<br><br>IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.<br><br>FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at<br>FREIGHT PREPAID | Place and date of issue<br>BARCELONA-06-11-2008 |
|---|---|
| Number of original Bs/L<br>THREE (3) | Signature<br>NAVIERA BARCELONESA, S.A. AS AUTHORIZED<br>VESSEL AGENT ON BEHALF OF THE MASTER / (MR.<br>ALEVOOR RADHAKRISHNA, M/V SATURNUS) |

**BILL OF LADING** Case 1:09-cv-05280-RMB     Document 1     Filed 06/05/2009     Page 41 of 56

TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGEBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and arbitration clause, are herewith incorporated.

(2) General Paramount Clause.

a) The Hague Rules contained in the International Convention for the unification of certain rules relating to Bills of Lading, dated Brussels th 25th august 1924 as enacted in the country of shipment, shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

b) Trades where Hague-Visby Rules apply.
In trades where the ntemational Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague-Visby Rukes - apply compulsory, the provisions of the respective legislation shall apply to this Bill of Lading.

c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or whilw the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modofication thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall shall be paid to the Carrier even when such average is the result of a faut, neglect or error of the Master, Pilot or Crew. The Charterers, Shippe

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment os any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage be paid for as fully as the said salving vessel or vessels belonged to stamgers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, ifrequired, be made by the cargo, shippers, consignees or owners of the goods to the Carrier before delivery.

(5) Both-to-Blame Collision Clause
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servents of the Carriers in the navigation or the management of the Vessel , the owners of the cargo carried hereunder willindemnity the carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liality represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliciing vessels or objects are at fault in respect of a collision or contact.

For partiulars of cargo, freight,
destination, etc., see overleaf.



# Exhibit C

26Feb09 09:20 NPE   1



Barna Conshipping S.L. , Barcelona

Barcelona
Spain

Invoice Date  26Feb2009
Invoice No  137199
Our Reference  088656,9011440000

Payment No.  10

## FREIGHT INVOICE

| | | | |
|---|---|---|---|
| *C/P Date* | 21Oct2008 | *Voyage no.:* | 082551 |
| *Vessel* | Satumus (804156) | *Operator:* | TS |
| *Charterer* | Barna Conshipping S L.., Barcelona | *Raised By:* | NPE |
| *Fixture Ref..* | 2008/3511 | | |

**Note all values are in USD**

| | |
|---|---|
| Detention at Norfolk: 49.9104 days @ 15.000,00 USD/day | 749.281,25 |
| TOTAL | 749.281,25 |

E. & O. E.

DUE DATE   26Feb2009

*Please remit according to the details below quoting Vessel Name, Our Reference and Invoice no.*

HSH Nordbank AG
Benef. Name  Oldendorff Carriers GmbH & Co. KG
Benef  A/c no.  118000 5690   IBAN DE 1321 0500 0011 8000 5690
Benef  Bankname,Country: HSH Nordbank AG, Hamburg, Germany
Swift, ABA Transit no. etc.: HSHNDEHHXXX
Corres. Bankname, Swift: The Northern Trust Int., A/C 105379-20230   SWIFT
CNORUS33

OLDENDORFF CARRIERS GmbH & Co KG  Tel  +49 (0) 451 1 5000  VAT Reg No DE13 S079776 · phG Verwaltung 'Alanis'
Willy-Brandt-Allee 6,  D-23554 Lübeck  Fax +49 (0) 451 73522  Schiffahrtsges. mbH · Amtsgericht Lübeck HR B 4019
Post P.  Box 2135,  D-23509 Lübeck  www.oldendorff.com  Managing Directors: Henning Oldendorff, Peter Twiss

# Exhibit D



Barna Conshipping S.L.., Barcelona

Barcelona
Spain

Invoice Date   22Jan2009
Invoice No   134197
Our Reference   088656,9011440000

Payment No.   6

# FREIGHT INVOICE

| | | | |
|---|---|---|---|
| *C/P Date:* | *21Oct2008* | *Voyage no.:* | 082551 |
| *Vessel:* | *Satumus (804156)* | *Operator:* | NPE |
| *Charterer:* | *Barna Conshipping S.L.., Barcelona* | *Raised By:* | NPE |
| *Fixture Ref.:* | *2008/3511* | | |

**Note all values are in USD**

| | |
|---|---|
| Detention at Mobile: 4.5542 days @ 15,000.00 USD/day | 68.312,50 |
| **TOTAL** | **68.312,50** |
| | E. & O. E. |

DUE DATE : 26Jan2009

*Please remit according to the details below quoting Vessel Name, Our Reference and invoice no.*

HSH Nordbank AG
Benef. Name: Oldendorff Carriers GmbH & Co. KG
Benef. A/c no.: 118000 5690   IBAN DE 1321 0500 0011 8000 5690
Benef. Bankname,Country: HSH Nordbank AG, Hamburg, Germany
Swift, ABA Transit no. etc.: HSHNDEHHXXX
Corres. Bankname, Swift: The Northern Trust Int., A/C 105379-20230   SWIFT
CNORUS33

OLDENDORFF CARRIERS GmbH & Co KG   Tel. +49 (0) 451 15000   VAT Reg No DE135079776 · phG Verwaltung 'Alanis'
Willy-Brandt-Allee 6,  D-23554 Lübeck   Fax +49 (0) 451 73522   Schiffahrtsges. mbH · Amtsgericht Lübeck HR B 4019
Mail: P.O. Box 2135, D-23509 Lübeck   www.oldendorff.com   Managing Directors: Henning Oldendorff, Peter Twiss

# Exhibit E



Barna Conshipping S.L., Barcelona

Barcelona
Spain

| Invoice Date | 8May2009 |
| Invoice No | 144115 |
| Our Reference | 088656,9011440000 |
| Payment No. | 12 |

# DETENTION INVOICE

| C/P Date: | 21Oct2008 | Voyage no.: | 082551 |
| Vessel: | Saturnus (804156) | Operator: | TS |
| Charterer: | Barna Conshipping S.L., Barcelona | Raised By: | EM |
| Fixture Ref.: | 2008/3511 | | |

### Note all values are in USD

**Detention at Houston: 7.1528 days @ 15,000.00 USD/day**      107.291,67
Time counting from: 23.01.2009 13.30lt (tendered NOR)
Time counting to:   30.01.2009 17.10lt ( POB for berthing)
Time on detention:  7.1527778 days @ 15.000,00 USD/d

| | |
|---|---|
| | 107.291,67 |
| **TOTAL** | E. & O. E. |

*Please remit according to the details below quoting Vessel Name, Our Reference and invoice no.*

HSH Nordbank AG

Benef. Name: Oldendorff Carriers GmbH & Co. KG
Benef. A/c no.: 118000 5690   IBAN DE 1321 0500 0011 8000 5690
Benef. Bankname,Country: HSH Nordbank AG, Hamburg, Germany
Swift, ABA Transit no. etc.: HSHNDEHHXXX
Corres. Bankname, Swift: The Northern Trust Int., A/C 105379-20230   SWIFT
CNORUS33

OLDENDORFF CARRIERS GmbH & Co. KG
www.oldendorff.com

Willy-Brandt-Allee 6  · D-23554 Lübeck
Mail: P.O. Box 2135 · D-23509 Lübeck

Tel  +49 (0) 451 15 00 0
Fax +49 (0) 451 7 35 22

VAT Reg. No. DE 262534012
Amtsgericht Lübeck HRA 3716

# Exhibit F

INVOICE
PORT OF HOUSTON AUTHORITY - BYC

#4

To: Transco Shipping (USA), Inc.
1606 Clinton Drive 2nd Floor
Ste. A
Galena Park, TX 77547

Received

FEB 1 8 2009

By Transco Shipping

| | CUSTOMER NUMBER | INVOICE NUMBER | INVOICE DATE |
|---|---|---|---|
| | 007777000 | B25659 | 17-FEB-09 |

Remit payment to:
Port of Houston Authority
P.O. Box 203417
Houston, TX 77216-3417

Report billing disputes in writing to:
Credit Department
Port of Houston Authority
P.O.Box 2562
Houston, TX 77252-2562

| TYPE REF | VESSEL NAME | LINE | VESSEL REFERENCE | ORIGINAL DRAFT ID | PERFORMED DATE |
|---|---|---|---|---|---|
| DK | SATURNUS | TRA | 09020003 | 274655 | 13-FEB-09 |

| CODE | DESCRIPTION | QTY | UNIT | RATE | AMOUNT |
|---|---|---|---|---|---|
| B035I | DOCKAGE:623FT 06FEB2009/08FEB2009 B | 2.000 | DAY | 7.2800 | 9070.88 |
| B035I | DOCKAGE:623FT 08FEB2009/09FEB2009 B | 1.000 | DAY | 6.5500 | 4080.65 |
| B035I | DOCKAGE:623FT 09FEB2009/10FEB2009 B | 1.000 | DAY | 5.4600 | 3401.58 |
| B035I | DOCKAGE:623FT 10FEB2009/11FEB2009 B | 1.000 | DAY | 4.3700 | 2722.51 |
| B035I | DOCKAGE:623FT 11FEB2009/13FEB2009 B | 2.000 | DAY | 3.6400 | 4535.44 |
| Z-SEC | SECURITY FEE/DOCKAGE BYC1 | 23811.060 | EA | 0.0600 | 1428.66 |

TOTAL DUE:    25,239.72

Voy: 82551   File: 247
Acct: Oldendorff
Cfm: 

Notes:

For billing inquiries call:
 (713) 670-2400

All invoices are due upon receipt.
Any invoice remaining unpaid over 30 days
is subject to additional charges in
accordance with PHA Tariffs.

Page 1/1

# Exhibit G



Barna Conshipping S.L., Barcelona

Barcelona
Spain

Invoice Date    17Feb2009
Invoice No    136313
Our Reference    088656,9011440000

Payment No.    8

---

# FREIGHT INVOICE

| C/P Date: | 21Oct2008 | Voyage no.: | 082551 |
| Vessel: | Satumus (804156) | Operator: | JB |
| Charterer: | Barna Conshipping S.L.., Barcelona | Raised By: | NPE |
| Fixture Ref.: | 2008/3511 | | |

**Note all values are in USD**

| | | |
|---|---|---|
| Detention at Houston for Altamira cargo: 8.3299 days @ 15,000.00 USD/day pr | | 124.947,92 |
| **TOTAL** | | 124.947,92 |

E. & O. E.

---

DUE DATE : 17Feb2009

---

*Please remit according to the details below quoting Vessel Name, Our Reference and invoice no.*

HSH Nordbank AG

Benef. Name: Oldendorff Carriers GmbH & Co. KG
Benef. A/c no.: 118000 5690   IBAN DE 1321 0500 0011 8000 5690
Benef. Bankname,Country: HSH Nordbank AG, Hamburg, Germany
Swift, ABA Transit no. etc.: HSHNDEHHXXX
Corres. Bankname, Swift: The Northern Trust Int., A/C 105379-20230   SWIFT
CNORUS33

---

OLDENDORFF CARRIERS GmbH & Co KG    Tel. +49 (0) 451 15000    VAT Reg No DE135079776 · phG Verwaltung 'Alanis'
Willy-Brandt-Allee 6,  D-23554 Lübeck    Fax +49 (0) 451 73522    Schiffahrtsges. mbH · Amtsgericht Lübeck HR B 4019
Mail: P.O. Box 2135, D-23509 Lübeck    www.oldendorff.com    Managing Directors: Henning Oldendorff, Peter Twiss

# Exhibit H

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BARNA CONSHIPPING, S.L. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-09-163 |
| | § | |
| 8,000 METRIC TONS, MORE OR LESS, | § | |
| OF ABANDONED STEEL, *in rem*, | § | |
| | § | |
| Dfendant. | § | |

Consolidated with

| | | |
|---|---|---|
| COMMERCIAL METALS COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-09-272 |
| | § | |
| M/V SATURNUS, in rem, her engines, tackle, | § | |
| apparel, etc., S-Bulk KS, Seven Seas | § | |
| Carriers AS, and Oldendorff Carriers | § | |
| GmbH & Co., KG, in personam, | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

Before the Magistrate Judge upon referral from the District Judge is S-Bulk KS' as Claimant

to the M/V SATURNUS, Motion to Vacate Arrest or Alternatively Set Security (Document No. 6).

In that motion, S-Bulk KS argues that Commercial Metal Company ("CMC") lacked standing to

arrest the vessel, and therefore the arrest should be vacated. In the alternative, S-Bulk KS argues that

the Court set security, in accord with the provisions of Rule E(5)(a) of the Supplemental Admiralty

Rules, based on the alleged damage to the cargo at issue. An evidentiary hearing was held on the

foregoing motion on February 10, 2009. At that hearing, S-Bulk KS argued that a bond in the

amount of $750,000 would provide reasonable security. CMC, in contrast, maintains that its loss is close to $5,000,000.00, and therefore a bond in that amount is warranted.

Having considered the parties' written submissions, the evidence presented at the hearing on February 10, 2009, and the parties' argument, it is

ORDERED that S-Bulk KS's Motion to Vacate Arrest (Document No. 6) is DENIED. CMC has made a prima facie showing of an admiralty or maritime lien against the M/V SATURNUS. Despite the fact that CMC does not have possession of the Bills of Lading, CMC has made a showing that it is the contract owner of the cargo made the basis of its damage claims. It is further

ORDERED that S-Bulk KS's Alternative Motion to Set Security (Document No. 6) is GRANTED, and security is set at $2,500,000.00. This amount covers the amount of "plaintiff's claim fairly stated," and is based on a consideration of the divergent testimony at the hearing as to the percentage of bundles damaged (from 25% to 32%), the evidence as to the percentage of the pieces damaged (approximately 2% - 3.5%), the evidence from CMC that it only sells "bundled" goods, and the evidence that the goods, even if damaged, have some salvage value.

Signed at Houston, Texas, this _11TH_ day of February, 2009.


_Frances H. Stacy_
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

# Exhibit I

<secure>SWIFT-Copy - wie telef. besprochen

**Von:**        andreas.koch@hsh-nordbank.com
**An:**         andreas.peschlow@oldendorff.com
**Betreff:**    <secure>SWIFT-Copy - wie telef. besprochen
**Priorität:**  Normal
**Gesendet:**   04.06.2009 15:10

---

SWIFT MESSAGE /

----------------------------------
1:F01HSHNDEHHAXXX1877609359
2:O1031401081113BSABESBBAXXX41086680210811131401N
3:108:JXpGX92)zq
119:STP
4:
:20:5172660974238930
:23B:CRED
:32A:081117USD1440162,45
:33B:USD1440162,45
:50K:/00815172850001047409 IDB08674384
BARNA CONSHIPPING, S.L.
S.VICENTE POL IN 8755
CASTELLBISBAL
ESPANA
:52A:BSABESBBXXX        ────────────> = JP Morgan Chase
:53A:CHASUS33XXX
:59:/DE13210500001180005690
OLDENDORFF CARRIERS GMBH AND CO KG
ALEMANIA
:70:INV NRS 127864-127867 M/V SATUMUS
:71A:SHA
--- END OF MESSAGE ---

Mit freundlichen Grüßen
Andreas Koch

HSH Nordbank AG
Transaction Service
Gateway

Tel. +49 (0)40 3333-23480
Fax +49 (0)40 3333-34180
Mail gateway-zv@hsh-nordbank.com

---

HSH Nordbank AG, Sitz: Hamburg, Kiel, Handelsregister: Amtsgericht Hamburg
HRB 87366, Amtsgericht Kiel HRB 6127 KI, Bankleitzahl: 210 500 00
Gerhart-Hauptmann-Platz 50, 20095 Hamburg, Tel. 040-33 33-0, Fax

file://C:\Documents and Settings\llambert\Local Settings\Temporary Internet Files\OLK26...   6/4/2009